53 F.3d 337
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 In re Thomas CHALKLEY, M.D. Debtor.
Thomas CHALKLEY, M.D. Appellant,
v.
Cynthia A. CARROLL, Appellee.
 No. 93-17198.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 13, 1995.
Decided April 25, 1995.
 
 Before: TANG, SCHROEDER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This appeal presents the issue of whether a debt owed by Thomas A. Chalkley to his ex-wife Cynthia Carroll under the terms of a divorce decree is "in the nature of alimony, maintenance, or spousal support" and is thus nondischargeable in bankruptcy or, alternatively, the debt is in the nature of a property settlement and is thus dischargeable in bankruptcy. See 11 U.S.C. Sec. 523(a). The bankruptcy court, after a trial held in October 1992, found that the debt was intended as spousal maintenance and nondischargeable in bankruptcy. The Bankruptcy Appellate Panel (BAP) affirmed. We have jurisdiction under 28 U.S.C. Sec. 158(d) and we affirm.
 
 
 3
 I. The Characterization of Chalkley's Debt to Carroll
 
 
 4
 The Bankruptcy Code until 1994[1] provides that an individual debtor does not receive a discharge from a debt owed "to a spouse, former spouse, or child ... for alimony to, maintenance for, or support of such spouse or child" if the debt is "actually in the nature of alimony, maintenance, or support." 11 U.S.C. Sec. 523(a)(5)(B); Shaver v. Shaver, 736 F.2d 1314, 1315 (9th Cir. 1984). "In determining whether an obligation is intended for support of a former spouse, the court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation." Shaver, 736 F.2d at 1316. Here, the bankruptcy court heard and examined all the evidence and found that Chalkley's obligation is intended for maintenance, rather than property division. The record shows that the bankruptcy court did not clearly err in arriving at this finding.
 
 
 5
 The language of the Post Marital Agreement ("Agreement") states that "maintenance ... is specifically waived and shall be denied in lieu of all of the other provisions herein contained." The Agreement later states, however, that "the husband shall, in lieu of maintenance, make cash payments to the wife, ... in the amount of $5,300.00 per month commencing with February 1, 1987, payable monthly thereafter on the first of each month for a period of 60 months ...."
 
 
 6
 Chalkley argues that the parties intended this language to mean that his obligation was in the nature of property division, rather than maintenance, and that it would be dischargeable in bankruptcy. Chalkley points to Carroll's testimony that "[w]ell, I'd lived through his first bankruptcy and his first ex-wife, and he wanted--that was a good way to get rid of her through bankruptcy" as evidence that Carroll intended Chalkley's obligation to be dischargeable in bankruptcy.[2]
 
 
 7
 The bankruptcy court found, however, that "there's an alternative reason given for the labeling, that being the desire, at least on Dr. Chalkley's part if not both parts, to avoid the ability to subsequently modify the support obligation." By characterizing the maintenance as cash payments over a set time, Chalkley was able to limit the amount and duration of his maintenance obligation. Henry Sibbing, who was Carroll's attorney and who drafted the Agreement together with Mr. Loeb, Chalkley's attorney, stated at trial:
 
 
 8
 [T]he attorney for a person in [Chalkley's] financial situation would want to limit the amount and duration of maintenance payments. It's something that every good divorce lawyer would try and do, in our state anyway, Wisconsin, for an individual of this sort. And that was one of the very first things that Mr. Loeb--that was probably the main issue of this case was determining how we could arrange to have those payments predetermined in terms of duration and amount.
 
 
 9
 Mr. Sibbing's testimony also indicates that the parties did not intend for these predetermined cash payments to be dischargeable in bankruptcy. In response to the question of whether "[d]uring the discussion with Mr. Loeb, was there any discussion of wanting this type of situation so that it would have a bankruptcy effect later on," Mr. Sibbing states:
 
 
 10
 Absolutely not. If there was any discussion with respect to that, we would not have entered into this agreement. If we suspected for one minute that there would be the plan of having this particular obligation discharged in bankruptcy, I can assure you I would not have allowed that to be a part of this agreement, and there was absolutely no discussion between Mr. Loeb and I in that regard.
 
 
 11
 Given the ambiguous language of the Agreement and Mr. Sibbing's testimony, the bankruptcy court did not clearly err in finding that the obligation is for maintenance rather than property settlement.
 
 
 12
 In arriving at its conclusion that Chalkley's obligation is for maintenance, the bankruptcy court also applied an 18-factor test taken from In re Coffman, 52 B.R. 667, 674-75 (Bankr. D. Md. 1985). Chalkley argues that the court abused its discretion because it should have looked in the first instance to the intent of the parties rather than a "laundry list" of factors. In Shaver, however, the Ninth Circuit expressly allowed courts to look at several factors in order to "aid in the characterization of the debt." Shaver, 736 F.2d at 1316.
 
 
 13
 Shaver sets forth four factors, all of which are contained in Coffman's 18-factor list. All of Shaver's four factors favor a finding that Chalkley's obligation is in the nature of maintenance rather than property settlement. Thus, the fact that the bankruptcy court applied an additional 14 factors to arrive at the same conclusion does not indicate it grossly abused its discretion. If anything, it simply indicates that the bankruptcy court did an extremely thorough analysis.
 
 
 14
 Factor one of Shaver states that "[i]f an agreement fails to provide explicitly for spousal support, a court may presume that a so-called 'property settlement' is intended for support when the circumstances of the case indicate that the recipient spouse needs support." Shaver, 736 F.2d at 1316. Here, the bankruptcy court stated:
 
 
 15
 [W]hether there was an alimony award entered by the state court, there was none. That really rules in favor of Plaintiff. There was no other alimony award exclusive of this particular clause.
 
 
 16
 Thus, factor one favors Carroll.
 
 
 17
 Factor two of Shaver is whether the facts indicate that support is necessary, such as "the presence of minor children and an imbalance in the relative income of the parties." Id. at 1316. Here, the bankruptcy court found that "[t]here was apparently a need for support at the time of the decree." The BAP noted that at the time the Judgment of Divorce was entered; "Carroll was earning no income, while Chalkley was making at least $10,000 per month." Thus, factor two favors Carroll.
 
 
 18
 Factor three of Shaver states that "if an obligation terminates on the death or remarriage of the recipient spouse, a court may be inclined to classify the agreement as one for support." Id. at 1316. Here, the bankruptcy court found that Chalkley's obligation terminated upon the death or remarriage of Carroll. Thus, factor three favors Carroll.
 
 
 19
 Factor four of Shaver looks to the nature and duration of the obligation. Support payments are "generally made directly to the recipient spouse and are paid in installments over a substantial period of time." Id. at 1317. Here, the bankruptcy court found that "the payments are made periodically. That's the case rather than in lump sum, and that's in favor of the Plaintiff." Thus, factor four favors Carroll.
 
 
 20
 Because factors one through four of Shaver all indicate that Chalkley's obligation is for maintenance and support, we conclude that the bankruptcy court did not clearly err in ruling that Chalkley's debt is nondischargeable in bankruptcy.
 
 II. Judicial Estoppel
 
 21
 Chalkley argues that Carroll's dual actions of going into state court and recovering a judgment for the entire amount of Chalkley's liability and failing to report the amounts she received from Chalkley as income to the IRS indicates that Carroll treated Chalkley's obligation as property rather than maintenance. Chalkley notes that maintenance obligations cannot be accelerated because they are modifiable under changed circumstances, and that maintenance payments are to be reported as income to the IRS. Chalkley contends that Carroll cannot, in state court and to the IRS, take the position that the obligation is for property division and then argue in federal bankruptcy court that the obligation is for maintenance. Chalkley thus invites this court to invoke the doctrine of judicial estoppel.
 
 
 22
 We have discretion in determining whether to invoke judicial estoppel, and we decline to do so in this case. See Yanez v. U.S., 989 F.2d 323, 326 (9th Cir. 1993) (stating that a court invokes judicial estoppel at its discretion). The purpose of judicial estoppel is to "protect the integrity of the judicial process." Morris v. California, 966 F.2d 448, 453 (9th Cir. 1991), cert. denied, 113 S. Ct. 96 (1992). There are two views of judicial estoppel, and this circuit has yet to choose whether to follow the majority or minority view. United States. v. Garcia, 37 F.3d 1359, 1367 (9th Cir.), cert. denied., 63 U.S.L.W. 3672 (U.S. Apr. 17, 1995) (No. 94-1480). Under both views, however, Chalkley loses.
 
 
 23
 In Garcia, the court stated the two views as follows:
 
 
 24
 Under the majority view, judicial estoppel does not apply unless the assertion inconsistent with the claim made in the subsequent litigation "was adopted in some manner by the court in the prior litigation." Under the minority view, judicial estoppel can apply even when a party was unsuccessful in asserting its position in the prior judicial proceeding, "if the court determines that the alleged offending party engaged in 'fast and loose' behavior which undermined the integrity of the court."
 
 
 25
 Garcia, 37 F.3d at 1367. Under both views, however, the party must have engaged in some form of "fast and loose" behavior. Yanez, 989 F.2d at 327.
 
 
 26
 Here, Chalkley cannot show that Carroll engaged in "fast and loose" behavior. The BAP noted that the reason Carroll asked for a judgment based on future arrearages is because Chalkley had started to avoid all payment and Carroll did not want to come into court each month to argue for payment. The BAP stated that Carroll
 
 
 27
 experienced great difficulty in collecting the judgment from Chalkley. Carroll's previous attempts to use bench warrants and contempt orders to collect the arrearages had proved unsuccessful and Chalkley had left the country. [Moreover,] [t]he appellate record contains no evidence that in order to secure the collection of future arrearages, either Carroll or her attorney told the circuit court that the judgment was for a property settlement.
 
 
 28
 Carroll's actions thus are not "fast and loose" and are not an abuse of the judicial process. Carroll was simply trying her best to collect payments due to her from Chalkley.
 
 
 29
 With respect to Carroll's actions of not reporting the payments on her 1987 tax return, there is evidence that it was simply a mistake--Carroll actually filed an amended tax return later that year. Moreover, as the BAP noted,
 
 
 30
 Carroll did not receive a benefit from excluding the payments on her 1987 tax return. She is still liable for the taxes, since the Judgment of Divorce provided that the payments received by Carroll would be included in her gross income and deductible from Chalkley's income--which is the standard tax treatment applied to alimony or maintenance payments.
 
 
 31
 Thus, because Carroll's actions do not offend judicial integrity, we decline to apply judicial estoppel.
 
 CONCLUSION
 
 32
 We affirm the BAP's holding that the bankruptcy court was not clearly erroneous in finding that Chalkley's obligation was in the nature of maintenance and, thus, nondischargeable in bankruptcy. We also agree with the BAP that judicial estoppel is not warranted in this case.
 
 
 33
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Because of a 1994 amendment of the Bankruptcy Code, all debts related to the dissolution of a marriage are now generally nondischargeable. See 11 U.S.C. Sec. 523(a)(15). The issue on appeal will thus generally no longer arise in bankruptcies filed on or after October 22, 1994
 
 
 [2]
 Carroll is Chalkley's second ex-wife