In re Michael Allen ANTHONY, Debtor.

Danielle R. ANTHONY, Plaintiff,

v.

Michael Allen ANTHONY, Defendant.

Bankruptcy No. 94–07114–BGC–7.
Adv. No. 95–00022.

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

Sept. 29, 1995.

See also 190 B.R. 429.

---

Suzanne Carlson, Birmingham, AL, for Defendant–Debtor.

Bruce Burttram, Birmingham, AL, for Plaintiff.

## MEMORANDUM OPINION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF A SECTION 523(A)(15) DEBT

BENJAMIN COHEN, Bankruptcy Judge.

This matter is before the Court on a Complaint to Determine Dischargeability of a "section 523(a)(15)" debt. A trial was held on June 15, 1995. Ms. Danielle R. Anthony, the plaintiff; Mr. Bruce Burttram, her attorney; Mr. Michael Allen Anthony, the Debtor and defendant; and Ms. J. Suzanne Carlson, the Debtor's attorney, appeared. The matter was submitted on the testimony of the plaintiff and the defendant, exhibits admitted into evidence and arguments of counsel. The specific debt subject to the complaint arises from the parties' divorce decree requirement that the Debtor would be responsible for paying the indebtedness on a mobile home.

## I. Procedure

While section 523(a)(5) of the Bankruptcy Code is available to litigants to determine whether domestic debts are "in the nature" of alimony and child support, section 523(a)(15) was added to the Bankruptcy Code, as the legislative history indicates, to close the dischargeability gap between property settlement debts, which are dischargeable, and alimony and child support debts which are not. The section provides that a discharge in bankruptcy does not discharge an individual debtor from a debt:

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

11 U.S.C. § 523(a)(15).[1] The legislative history of the section is uncharacteristically

---

**1.** Paragraph (5) referred to above provides for the nondischargeability of a debt:

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
  (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise

(other than debts assigned pursuant to section 402(a)(26) of the Social Security Act [42 USCS § 602(a)(26)], or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
  (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

clear and is helpful in deciding this matter. The history reads:

Subsection (e) adds a new exception to discharge for some debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support. In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such obligations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts. In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts. The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a non-debtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

The new exception to discharge, like the exceptions under Bankruptcy Code section 523(a)(2), (4), and (6) must be raised in an adversary proceeding during the bankruptcy case within the time permitted by the Federal Rules of Bankruptcy Procedure. Otherwise the debt in question is discharged. The exception applies only to debts incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital debts that were owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation agreement. It is only the obligation owed to the spouse or former spouse—an obligation to hold the spouse or former spouse harmless—which is within the scope of this section.

H.R.Rep. No. 835, 103d Cong., 2nd Sess. 54 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3363 (note 19 to the above reads, "*See In re MacDonald,* 69 B.R. 259, 278 (Bankr.D.N.J. 1986)").

█ Debts for alimony and child support are, as a general rule under 11 U.S.C. § 523(a)(5), not discharged in bankruptcy. Debts that are classified as property settlements under that same section are, as a general rule, dischargeable. The Bankruptcy Reform Act of 1994 amended section 523 to add subsection (15) which excepts from discharge debts that would normally qualify for discharge because they are not of the type specified in section 523(a)(5). In an attempt to capture these property settlement debts, Congress created a system where the debts would not be discharged unless a debtor demonstrated either of the two criteria from section 523(a)(15), that is (A) the debtor's inability to pay the debt or (B) the benefit to the debtor of a discharge outweighs the detriment to the non-debtor. The burden is on the debtor to prove the exceptions in subsection (15). The clear intent of this section is to make the discharge of these debts more difficult for a debtor.

### A. Section 523(a)(15)(A)— Inability to Pay

█ In making determinations of whether a particular debtor qualifies for the relief a

chapter 13 bankruptcy affords, courts consider whether an individual qualifies as a "debtor" under 11 U.S.C. § 109(e). Courts consider whether a plan proposed by a debtor is feasible, that is whether the debtor will be able to make all payments under the plan and will be able to comply with the plan, as prescribed by 11 U.S.C. § 1325(a)(6). Courts analyze a debtor's ability to pay debts based on the amount of the debtor's disposable income as defined in 11 U.S.C. § 1325(b)(2). In determining whether a chapter 7 debtor has abused the bankruptcy system, courts consider whether a debtor is able to pay debts and thus avoid a violation of 11 U.S.C. § 707(b). In deciding whether a debtor's student loan debt is dischargeable courts consider whether a debtor's current income and expenses allow for a minimum standard of living as derived from 11 U.S.C. § 523(a)(8). All of the factors courts consider in making these determinations relate to an "ability to pay." These factors may be helpful in deciding the outcome of a proceeding under section 11 U.S.C. § 523(a)(15). *See In re Hill,* 184 B.R. 750 (Bankr.N.D.Ill. 1995).

### B. Section 523(a)(15)(B)—Benefits and Consequences

Although second in time to subsection (15)(A), subsection (15)(B) exists on an equal footing and if satisfied determines the issue of a subsection (15) proceeding. Subsection (15)(B) requires a comparison of the financial conditions of the parties. The case of *In re MacDonald,* 69 B.R. 259 (Bankr. D.N.J.1986) as cited in the legislative history of the section recites factors courts have considered in attempting to determine whether "domestic" debts are alimony or support or are, on the other hand, property settlements. Factors from *MacDonald,* and other cases include: changes in circumstances from the time of the divorce or separation to the filing of the bankruptcy petition; the relative income and worth of the parties; employment or potential for employment; the non-debtor's responsibility for other debts; a comparison of the debtor's and non-debtor's post-bankruptcy obligations; the

present financial conditions of the parties; and, effect on children, if there are any.

### II. Findings of Fact

A final judgment of divorce was issued for the parties on Nov. 29, 1993. That judgment provided that a mobile home was awarded to the Debtor and that he would hold the plaintiff harmless for any debt due on the mobile home and that the Debtor would attempt to contact the mortgage holder on the mobile home to have the plaintiff's liability removed from the debt.

After the divorce the Debtor continued to live in the mobile home and continued to make the mortgage payments on the home. At a point, one he cannot now specify, the Debtor stopped making the payments, moved out of the home and moved in with his mother, which is where he was living at the time of the hearing. Before the divorce Ms. Anthony moved to an apartment in Warrior, Alabama and later purchased a house in Cahaba Heights, Alabama. She understood that the Debtor was making the mobile home payments at the time she moved and was living in her house when she learned about the default on the mobile home payments. The parties' three year old son lives with Ms. Anthony in Cahaba Heights.

The Debtor's petition lists the mobile home debt as $32,644.00 to Security Pacific Housing Services and lists Ms. Anthony as a co-debtor on that debt. According to the plaintiff's complaint, after the mortgage default occurred, the mobile home was repossessed by and sold by Security. A deficiency of $8,179.50 resulted from the sale. Also according to the plaintiff's complaint, the owner or manager of the mobile home lot claims unpaid rent of $789.00. The Debtor listed that debt as $600.00 on his petition.

Both parties work outside their homes. The Debtor is a certified paramedic and works for Hanks Acquisition Corporation, an emergency service. The Debtor's current monthly income is $2,600.00 and his *net* income is $1,516.66 per month before day to day expenses.[2] Prior to filing his bankruptcy

---

2. The Debtor's net income includes deductions

for back child support of $108.33 and current

petition the Debtor also worked as a paramedic with the Cahaba Heights Fire District. He lost that job and his monthly income dropped from $2,872.00 to the current amount. During the marriage the Debtor worked at both jobs for approximately one and one-half years.

The Debtor does not have any extraordinary expenses. He assists his mother with house expenses. He will soon pay all he owes in delinquent child support. He does not have a current automobile debt. The Debtor contends that his loss of income resulting from his termination from the second job was the reason for his failure to make the current mobile home payments. The Debtor does not intend to remain with his mother and plans to move to another location. The Debtor does not have any part-time jobs.

Ms. Anthony works for Protective Life Insurance Company. Her net income is $490.00 bi-weekly or $12,740.00 annually resulting in a monthly average *net* income of $1,061.67. While Ms. Anthony does not have any other regular income, she is to receive child support payments from the Debtor of $568.00 per month.[3]

Ms. Anthony's current house payments are $279.00. The parties' son is healthy. His medical bills have not been high. Health insurance is provided through Ms. Anthony's employer. Child care does, however, cost approximately $300.00 per month.

Ms. Anthony's grandmother died in 1992. Ms. Anthony was the sole beneficiary of her grandmother's estate. She has received a portion of the estate and will receive the remainder when she becomes 30 years old. From her testimony it appears that her grandmother's home and belongings were sold for $42,000.00 which went to Ms. Anthony. In 1994 she purchased a new car for cash and in 1995 she paid $10,000 cash down on the Cahaba Heights home. Of the original $42,000.00 Ms. Anthony testified that there was approximately $10,000.00 remaining and that she has about $4,000.00 in her checking account. The estate has been closed and $31,000.00 remains in trust for Ms. Anthony. She will receive this amount when she becomes 30 years old in January 1996.

### III. Conclusions of law

■ Debts subject to section 523(a)(15) are nondischargeable unless the debtor can prove that one of two exceptions apply. To decide whether the Debtor has met that burden this Court has considered facts as they existed at the time the bankruptcy petition was filed, not those that existed at the time the divorce decree was entered.[4]

### A. Section 523(a)(15)(A)

■ Regardless of what set of legal criteria is considered, the Debtor has the current ability to pay these debts, or at least a portion of them. His gross monthly income

---

child support of $568.79, along with the regular tax and social benefits deductions.

**3.** Ms. Anthony is also to receive back child support but the parties did not explain how long those payments would last but they did indicated that the time may be short.

**4.** As the Court in *In re Hill,* 184 B.R. 750 (Bankr. N.D.Ill.1985) noted, "This measuring point differs from the one for cases brought under Section 523(a)(5), where the measuring point in the time of the entry of the divorce decree." *Id.* at n. 13 (citing *In re Szuch,* 117 B.R. 296, 301 (Bankr. N.D.Ohio 1990); *In re Fahland,* 110 B.R. 431, 432 (Bankr.E.D.Mo.1990). The reason for the different points of reference is clear, subsection (15) is measured in terms of a debtor's current ability to pay or measured in terms of a comparison of the parties' current financial conditions.

Debtors in the three reported cases construing section 523(a)(15), including *In re Hill,* have suc-

ceeded in discharging their domestic debts. *See; In re Becker,* 185 B.R. 567 (Bankr.W.D.Mo.1995); *In re Comisky,* 183 B.R. 883 (Bankr.N.D.Cal. 1995) (a $25,000 debt was reduced to $10,000). In an article entitled "Debtors are Early Winners in New Discharge Battle" the editors of Consumer Bankruptcy News write:

It is important to note that under both subsections of Section 523(a)(15), the court's determination is based on the facts as they exist as of the date of the bankruptcy filing and not with what their relative financial positions were when the agreement was signed or the divorce decree entered. As seen in *Becker,* changes in the economic position of the parties between the divorce and the bankruptcy can provide the basis for the discharge of these debts.

5 Consumer Bankruptcy News (BCD) 1 (Sept. 28, 1995). See note 7 below.

is approximately $2,600.00. Payroll taxes and social security for $406.21, back child support payments for $108.33 and current child support payments of $568.79 are deducted from his gross income leaving net income of $1,516.67. Although Mr. Anthony estimates his monthly expenses as $1,520.00, and testified that since the divorce his income has declined due to the loss of a second job, his expenses must be less than his income. He lives with his mother. He does not have a current car payment. He does not have any dependents other than his son, whose child support has already been deducted from the Debtor's gross income. He will soon pay all he owes in delinquent child support which will result in an income increase of approximately $100.00 per month. Considering the facts, the only conclusion this Court can reach is that the Debtor has the ability to pay these debts, or a portion of these debts from income or property not reasonably necessary to be expended for the maintenance or support of himself or his son.[5]

### B. Section 523(a)(15)(B)

Unlike Mr. Anthony, Ms. Anthony may be unable to pay the subject debts from current income, although her financial condition is different from the Debtor's. Her net monthly income of $1,061.67, excluding the $568.00 due from the Debtor as child support payments, is significantly less than the Debtor's but her assets are greater. Since the divorce, Ms. Anthony has received $42,000 from her grandmother's estate and will receive another $31,000.00 in less than six months. Ms. Anthony's current mortgage payment is $279.00 and current daycare costs for the parties' son is approximately $300.00 per month. These debts alone would consume the $568.00 child support payment she receives from the Debtor leaving $1,061.67 in real income for all other expenses for the parties' son and her.

The plaintiff testified that when she purchased her house in Cahaba Heights, the mobile home default had not occurred, or if it had she was not aware of it. She stated that she purchased that house with the understanding that the Debtor would make all payments on their mobile home and that she does not have the resources to make both her current house payments and the mobile home payments. Congressional citing of the case of *In re MacDonald,* 69 B.R. 259, 278 (Bankr.D.N.J.1986) in the legislative history directs courts to consider factors such as the ones listed above.[6] In consideration of these types of factors the Court finds that the parties' circumstances have changed significantly from the time of their divorce to the time of the filing of the Debtor's bankruptcy.[7] The Debtor's current net income is

5. As this case moves to a close the Debtor will be discharged from a significant amount of debt. Should a chapter 13 standard be used for a chapter 7 dischargeability issue? Is an "ability to pay" created by a "chapter 20" case where a debtor has the ability to place the subsection (15) debt in a chapter 13 plan after having discharged all but that section 523(a)(15) debt? Does the statute's requirement of "ability to pay" create an "involuntary" chapter 13 case for a chapter 7 debtor who otherwise would not have the ability to pay? Does the lack of a clear public policy basis for the nondischargeability of these debts change a court's role in dischargeability proceedings, where Congress placed the issue of ability to pay on a purely financial basis as opposed to the familiar policy bases that exist in the other subsections of section 523?

6. The fact that these criteria were designed for section 523(a)(5) analyses and that Congress suggests that they now be applied to subsection (a)(15), is troubling. Applying these criteria to facts that existed at the time the parties were divorced may yield results different from those if the criteria is applied to facts that existed when the bankruptcy or the dischargeability complaint was filed. See note 7 below.

7. While section 523(a)(15) is new, this Court speculates that the facts of this case will be significantly different from the many other cases that will be decided under this section. Few people inherit, at the time of a divorce or separation, the amount of money Ms. Anthony received. Congressional policy favors the nondischargeability of the debts in this proceeding. The legislative history of section 523(a)(15) explains that the divorce agreement entered into by these parties is exactly the type Congress wanted to capture in this subsection. There is no alimony. The Debtor was to hold Ms. Anthony harmless for future payments on a mortgage debt. Surely Congress did not envisioned a situation similar to the one before this Court when it decided to allow for the discharge of debts where the debtor spouse could demonstrate financial circumstances worse than those of a non-debtor spouse. But given these facts and the congressional ap-

greater than the plaintiff's but the plaintiff's net worth is greater than the Debtor's. Both parties are employed in stable positions.

While there is a benefit to the Debtor if these debts are discharged, there is significant harm to Ms. Anthony if they are. If an order of dischargeability is entered, Ms. Anthony would be responsible for debts she anticipated would be paid by Mr. Anthony and it appears that her income would not be sufficient to meet current obligations if she is required to pay these debts. On the other hand, the inheritance she has received provides significant assistance, along with the assets she has purchased with that inheritance.

Both parties make significant contributions to the support of their child, the Debtor monetarily and Ms. Anthony in time, emotion, money and hard work.

Neither appears to be in dire financial straits, the Debtor because of his chapter 7 bankruptcy and Ms. Anthony because of her inheritance. Neither leads a luxurious lifestyle and neither seems to have any extraordinary debts. Their post-bankruptcy obligations seem to be similar. The difference will of course be which party is obligated for the mobile home debt.[8]

Considering the facts, the Court finds that the Debtor failed in his burden to prove that the benefit to him outweighed the detrimental consequences to Ms. Anthony. While the Debtor's discharge is a significant benefit, in this case it simply does not outweigh the harm to Ms. Anthony. The statute requires that the benefit "outweigh" the harm. In considering this test in the context of this

proach created in section 523(a)(15)(B), a court could find that a purely legal result would be that the debts in this proceeding should be discharged.

Congress did not amend or abolish section 523(a)(5) and did not change bankruptcy courts' authority to find that debts from divorce decrees or separation agreements were in the nature of alimony or support and presumably complaints could be filed under both. The approach taken by a non-debtor spouse may have a direct impact on the result. Whether there has been a change of circumstances for the parties becomes critical in comparing the result of a section 523(a)(15) proceeding to one under section 523(a)(5). A court considers facts for subsection (5) matters

case, the facts demonstrate that the scales, if not in Ms. Anthony's favor, are equally balanced.

## IV. Conclusion

■ An honest, but unfortunate, debtor is entitled to a fresh start. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). But that fresh start should not be at the expense of or on the back of another. The Debtor clearly has the ability to pay these debts. Ms. Anthony, short of her inheritance, does not. That inheritance, like the Debtor's discharge, is Ms. Anthony's fresh start. If this Court were to find that the harm to Ms. Anthony, because she would be able to pay these debts from an inheritance, would be less than the Debtor's benefit of a discharge of these debts, a legally correct result may occur, but an equitable one would not, an ironic circumstance for a court of equity. This case demonstrates an equality of circumstances. To the extent that Ms. Anthony would be responsible for the probably unsecured lot rental debt, that debt is not dischargeable in this case. As for the secured debt to Security Pacific Housing Services of $8,179.50, that debt is nondischargeable in this case. A separate order consistent with this memorandum opinion will be entered.

## ORDER DENYING COMPLAINT TO DETERMINE DISCHARGEABILITY

In conformity with and pursuant to the Memorandum Opinion entered contemporaneously herewith, it is **ORDERED, ADJUDGED AND DECREED** that:

as the facts existed at the time of the divorce or separation. Subsection (15) facts are considered as of the filing of the bankruptcy or the dischargeability complaint. Different facts, when applied to identical criteria, often yield different results. In this case there is no evidence before the Court to determine whether the parties intended that the mobile home payments would be a substitute for alimony or support and the question of whether the debt is one "in the nature of alimony or support" was not raised either in the pleadings or at trial.

8. Without making a formal determination, the Court assumes that the lot rental debt is an unsecured debt and would be discharged in Mr. Anthony's case.

1. Judgment is entered for the Plaintiff and against the Defendant.

2. The mobile home debt of $8,179.50 is not dischargeable in this case.

3. The mobile home lot rental debt is not dischargeable in this case, if it is the responsibility of the Plaintiff.