In re Thomas C. FLOREZ, Debtor.

Pamela COLLINS, f/k/a Pamela
Florez, Plaintiff,

v.

Thomas C. FLOREZ, Defendant.

Bankruptcy No. 95 B 50775.
Adv. No. 95 A 5060.

United States Bankruptcy Court,
N.D. Illinois,
Western Division.

Dec. 7, 1995.

Thomas J. Lester, Rockford, IL, for plaintiff.

Raymond X. Henehan, Cary, IL, for defendant-debtor.

## MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter came before the Court for trial on November 30, 1995, on the Complaint of the Plaintiff, Pamela Collins,[1] f/k/a Pamela Florez, to Determine Dischargeability of Debt and For Money Damages. The Plaintiff is represented by Attorney Thomas J. Lester. The Defendant–Debtor, Thomas C. Florez, is represented by Attorney Raymond X. Henehan.

## BACKGROUND

The Debtor filed for voluntary relief under Chapter 7 of the Bankruptcy Code ("Code") on April 14, 1995.

The marriage between the Debtor and the Plaintiff was dissolved on February 9, 1994, by the entry of a Judgment of Dissolution of Marriage. The Judgment of Dissolution of Marriage incorporated a Marital Settlement Agreement ("MSA").

Two aspects of the MSA are pertinent. Under Article IX of the MSA, the Debtor is solely responsible for the Visa Gold credit card obligation. The debt on the Visa Gold card is approximately $5,000, plus interest and late charges. The current annual rate of interest charged on the Visa Gold card is 18.95%. Article X of the MSA states that "[i]n the event of any court proceedings arising out of a default under the terms of this Agreement or failure of either party to make payments as outlined, the prevailing party shall be entitled to be awarded court costs and attorney's fees."

The Debtor made at least two payments on the Visa Gold card debt. The pleadings indicate a $300.00 payment in April of 1995, and a $159.00 payment in May of 1995.

The Debtor's testimony regarding the use of the Visa Gold card was contradictory. Initially, the Debtor testified that he did not remember using the Visa Gold card after the

---

1. The Pleadings indicate that the Plaintiff's name is Pamela Collins. The Plaintiff testified that her name now is Pamela Andrews.

divorce and asserted the card had been "cut up". Thereafter, the Debtor testified that purchases from the Victoria Secret catalog were made on the Visa Gold card. Apparently, the card was "cut up", but the Debtor retained the account number. He also rented an automobile during an Air Force Reserve trip to Niagara Falls on the Visa Gold card. These purchases and services were incurred after the date of the divorce. The sum of $1,048.44 was charged by the Debtor to the Visa Gold card after the divorce in February of 1994, until the bankruptcy petition in April of 1995. The Debtor, while testifying that all payments were made on these post-divorce charges, disputes whether all purchases were made by him.

The Plaintiff made post-divorce Visa Gold card payments totalling $1,265.00. Her testimony that she has not charged anything on the Visa Gold card since the divorce was not contested.

The Debtor is a mail carrier for the United States Postal Service. After deductions for child support and taxes, the Debtor receives approximately $700.00 every two weeks. He earns another $160.00 per month from the Air Force Reserve Unit. The Debtor has no other source of income. Thus, the Debtor's monthly income is approximately $1,676.00.[2]

The Debtor's monthly expenses include:

1) Rent — $725
2) Car payments — $268
3) Utilities — $150
4) Groceries — $50—$100
5) Car insurance — $65
6) Air Force — $30 [3]
7) Gas — $40

The Debtor mentioned incidentals, such as braces for his child, extraneous child care expenses, car repairs, clothing, and medical. No estimated amount was provided to the Court. The Debtor's expenses without the incidentals total $1,378.00.

2. The Plaintiff's attorney noted that an employee who is paid twice a month actually will receive an extra payment during two months of the year. Calculating the additional two payments over a twelve month period provides the Debtor with an additional monthly income of approximately $116.00. The Court will include this amount in determining the Debtor's monthly income.

The Debtor's bank statement indicated that the Debtor issued a check to Bally's Health Club for $33.43 and to CellularOne for $194.09. These checks were written after the bankruptcy was filed. The Debtor testified that he no longer belongs to Bally's Health Club and that the payment to CellularOne was to shut off the cellular phone.

The Plaintiff requests the Court find that the obligation owed by the Debtor to the Plaintiff, in the amount of $7,573.70, plus interest at the applicable rate until paid, is nondischargeable pursuant to Section 523(a)(15).[4]

## ISSUE

Whether the obligation between the Debtor and the Plaintiff created by the MSA to pay the Visa Gold card debt should be nondischargeable under Section 523(a)(15).

## DISCUSSION

This Court ventured into the unchartered waters of Section 523(a)(15) in its decision *In re Hill*, 184 B.R. 750 (Bankr.N.D.Ill.1995). Now, the Court must revisit Section 523(a)(15). Although other courts have ventured into the same waters, the waters remain choppy with unresolved issues and developing flaws.

Section 523(a)(15) provides that:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

3. The Debtor spends about $5 to $10 in food and $20 in transportation during his monthly Air Force Reserve meetings.

4. This amount includes the Plaintiff's attorney fees and costs totalling $1,740.90.

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

11 U.S.C. § 523(a)(15).

■ After the Plaintiff establishes that she holds a claim not of the kind described in Section 523(a)(5), the majority of courts agree that the burden shifts to the Debtor to show either 1) that he lacks the ability to pay the debt from income or property not needed to support himself and any dependents, or 2) that the discharge would be more beneficial to the Debtor than detrimental to the ex-spouse. *See Hill*, 184 B.R. at 753–54; *In re Phillips*, 187 B.R. 363, 368 (Bankr.M.D.Fla. 1995); *In re Silvers*, 187 B.R. 648, 649 (Bankr.W.D.Mo.1995) (burden of going forward, not burden of proof shifts to the debtor); *In re Carroll*, 187 B.R. 197, 200 (Bankr. S.D.Ohio 1995); *In re Becker*, 185 B.R. 567, 569 (Bankr.W.D.Mo.1995) (burden of proof shifts to the debtor after plaintiff brings dischargeability action under Section 523(a)(15)). *But see In re Butler*, 186 B.R. 371, 373–74 (Bankr.D.Vermont 1995) (burden of proof remains with the creditor).

The debtor must meet the burden on only one of the two prongs of Section 523(a)(15) to prevent the debt from being excepted from discharge.

\*    \*    \*

■ At the outset, the Court notes that the Debtor placed all his cards on the "ability to pay" prong. No evidence was presented to show the benefit of the Debtor's discharge of this debt would outweigh the detrimental consequences to the Plaintiff. The question, then, becomes whether the Debtor's financial condition allows him to pay the obligation to the Plaintiff without jeopardizing his ability to support himself and any dependents.

■ Under Section 523(a)(15)(A), the disposable income test of Section 1325(b)(2) aids the Court in its "ability to pay" determination. *See Hill*, 184 B.R. at 755.

Here, the Debtor earns approximately $1,676.00 per month and expends approximately $1,378.00 per month. His testimony revealed that his monthly expenses did not include certain incidentals such as health care, clothing and car repairs. As suggested by the Plaintiff, even if the Debtor incurred $150.00 per month in incidental expenses, $148.00 per month remains available to be paid toward the obligation owed to the Plaintiff.

The facts of this case illustrate a surfacing dilemma in Section 523(a)(15) actions. Did Congress intend an "all or nothing" result? *See Silvers*, 187 B.R. at 649 (the application of Section 523(a)(15) is probably an "all or nothing situation").

Here, the Debtor has approximately $150.00 per month to apply to an obligation which currently carries an 18.95% annual interest rate. Note that a significant portion of the Debtor's monthly payment will be consumed by the finance charge. Thus, the Debtor's disposable income allows him to essentially make interest payments, while the principal slowly decreases. There is no saying when the Debtor will complete this obligation.[5] Had the Debtor's disposable income covered only interest payments, the Court may have been compelled to find that the Debtor does not have the ability to pay.

■ Furthermore, since subsections (A) and (B) of Section 523(a)(15) are disjunctive, no equitable factors figure into the Debtor's ability to pay under Section 523(a)(15)(A). The irony is that the Plaintiff could be a millionaire, but that is irrelevant to the anal-

5. For the record, the Debtor does not have the ability to pay the obligation in one immediate lump sum payment. The logical interpretation of the statute must contemplate the ability to pay the nondischargeable obligation over a period of time, unlike, for instance, the redemption right of Section 722.

ysis under Section 523(a)(15)(A). A debtor may be forced to struggle to pay off an obligation from a paltry salary while the ex-spouse maintains a more advantageous financial position. The concept of a fresh start is amply challenged by application of Section 523(a)(15)(A). There is no doubt that in cases such as the one here, the Court is forced to apply Section 523(a)(15)(A) in a way which nickels and dimes the Debtor.[6]

The Court is not comfortable with the result, but under the language of Section 523(a)(15)(A), the Debtor has not proved by a preponderance of the evidence that he lacks the ability to pay the obligation. Indeed, even if the burden of proof were on the Plaintiff, the evidence supports a finding that the Debtor has the ability to pay.

\*   \*   \*

■ We're not through yet. The Court also must address the issue of Plaintiff's attorney fees.

■ Under the "American Rule", in cases brought upon or involving federal law, attorneys' fees are ordinarily not recoverable absent a specific statutory authority, a contractual right or aggravated conduct. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975).

The Plaintiff's Complaint to Determine Dischargeability and For Money Damages was brought under Section 523, a federal law. Section 523(a)(15), however, does not contain, nor does it contemplate, a provision for an award of attorney fees to a prevailing party. Only Section 523(d), which pertains to Section 523(a)(2) actions, provides for such relief. *See* 11 U.S.C. § 523(d).

One court has found that the inquiry under Section 523(a)(15) is to "determine what portion of the award in state court is nondischargeable, not to award additional support or create new, nondischargeable debt. If the [prevailing party] needs additional support

---

6. In *In re Comisky*, 183 B.R. 883, 884 (Bankr. N.D.Cal.1995), the court, applying an analysis similar to undue hardship situations under Section 523(a)(8), found the debtor had the ability to pay a portion of the debt over time, while the remainder of the debt was dischargeable.

due to the financial burdens of this litigation, she may seek modification of her divorce decree in the state court." *In re Colbert*, 185 B.R. 247, 250 (Bankr.M.D.Tenn.1995). Likewise, the Plaintiff here can seek, and *perhaps* find, relief from the burden of her attorney fees in state court.

■ Furthermore, the Court finds that the award of attorney fees and costs in a bankruptcy proceeding to determine the dischargeability of a debt is beyond the scope of Article X of the MSA. The award of attorney fees to the prevailing party is within the Court's discretion. *See e.g., In re Sain*, 101 B.R. 30, 32 (Bankr.C.D.Ill.1988) (not awarding attorney fees to prevailing creditor in a Section 523(a)(6) action despite language in note allowing for such fees as part of the costs for collection). Litigation under Section 523(a)(15) should not be encouraged by loading attorney fees on the underlying nondischargeable debt, thereby further impeding the Debtor's fresh start.

Thus, the Court finds that payment of the attorney fees incurred by the Plaintiff in bringing the dischargeability Complaint should remain with the Plaintiff.

## CONCLUSION

The Court concludes that Section 523(a)(15) should be the subject of critical review by the Bankruptcy Review Commission; that under the facts here the Debtor has the ability to pay the debt over a period of time; that the Plaintiff's ability to pay is neither a factor nor an issue under Section 523(a)(15)(A); that the debt arising in the MSA, based on the Visa Gold card, from the Debtor to the Plaintiff, including interest at the applicable rate, is nondischargeable under Section 523(a)(15); and that the Plaintiff's request for attorney fees should be denied.

This Court is not persuaded that an undue hardship analysis belongs within the bounds of Section 523(a)(15). If the Debtor's financial circumstances deteriorate, he may have to consider the merits of filing a Chapter 13. Under Chapter 13, unlike Chapter 7, the Debtor may be able to discharge a portion of this debt.

Attorney Lester should submit an Order accordingly.