**In re Edwin G. STRAYER, Debtor.**

**Patty Strayer, Plaintiff,**

**v.**

**Edwin G. Strayer, Defendant.**

**Bankruptcy No. 95–7172–RLB–7.
Adversary No. 95–535.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

April 10, 1996.

the California real estate, as a matter of law. *See* 11 U.S.C. § 362(c)(1), (2)(C).

Edward B. Hopper, II, Bamberger & Feibleman, Indianapolis, IN, for plaintiff.

Darrell J. Dolan, Indianapolis, IN, for debtor/defendant.

*FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ENTRY ON COMPLAINT FOR NON–DISCHARGEABILITY OF DEBT*

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the Court on the Complaint under Section 523(a)(15) for Non–Dischargeability of Obligations of Debtor under Decree of Dissolution Entered June 5, 1995 ("Complaint"), filed by Patty Strayer ("Ms. Strayer") on December 26, 1995. Edwin G. Strayer ("Debtor") filed an answer ("Answer") to the Complaint on January 19, 1996. A trial on the Complaint and Answer was held on March 27, 1996. The Court, having reviewed the Complaint, the Answer, and the matters presented at the March 27, 1996 trial, and pursuant to Federal Rule of Civil Procedure 52 and Bankruptcy Rule 7052, now makes its

*Findings of Fact*

1. The Debtor filed a petition under Chapter 7 on September 21, 1995.

2. Prior to the bankruptcy filing, the marriage of Ms. Strayer and the Debtor was dissolved by a decree ("Dissolution Decree") issued on June 5, 1995. The parties have three children. Physical custody of Andrew, now 16 years old, and Patrick, now 8 years old, was awarded to Ms. Strayer. Physical custody of Matthew, now 12 years old, was awarded to the Debtor. The Debtor was ordered to pay $136.00 per week in current child support, and $20.00 per week for past due child support.

3. Pursuant to the Dissolution Decree, the Debtor was awarded the business he ran, Fitzpatrick Sports Bar (the "Sports Bar"). Ms. Strayer was awarded the equity from the sale of the marital home totalling approximately $40,000.00, and an IRA account totalling approximately $3,000.00. The Debtor was ordered to hold Ms. Strayer harmless on a credit card account totalling approximately $5,000.00 (the "Credit Card Debt"). The Debtor was also ordered to pay Ms. Strayer approximately $29,500.00 to equalize the division of the marital estate (the "Property Division Debt").

4. The Debtor is currently employed by Papa Johns Pizza, and makes a gross salary of $450.00 per week. The Debtor's weekly available income, net of child support, is $294.00. The Debtor's average weekly expenses, net of child support, total $397.93, with the result that the Debtor's weekly expenses exceed his weekly income by approximately $104.00. The Debtor is a college graduate, with a degree in marketing. At some time prior to his current employment, the Debtor worked for Wendy's as a manager of 32 stores, at a salary of approximately $50,000.00 per year. The Debtor hopes that his compensation as an employee of Papa Johns will increase as the company increases the number of stores it operates.

5. At the time of the dissolution, the Debtor operated the Sports Bar, which has since failed as a business. When the parties acquired the Sports Bar, they made a down payment of approximately $35,000.00, and incurred a debt of approximately $225,000.00.

6. Ms. Strayer is currently employed as an office administrator, and makes a gross salary of approximately $370.00 per week. Ms. Strayer receives $156.00 per week in child support. Ms. Strayer's average weekly expenses total $470.93, with the result that Ms. Strayer has a weekly surplus of income over expenses of approximately $55.00. Ms. Strayer has completed one year of college-level courses.

Based on the foregoing Findings of Fact, the Court now makes its

### Conclusions of Law

1. Ms. Strayer argues that the Credit Card Debt and the Property Division Debt are non-dischargeable pursuant to 11 U.S.C. § 523(a)(15).

2. The Bankruptcy Reform Act of 1994, enacted on October 22, 1994, created a new subsection of debt that would be excepted from discharge. The new subsection, Section 523(a)(15), provides as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt—
>
> . . . .
>
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation . . . unless—
>
> > (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> >
> > (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor. . . .

3. Section 523(a)(15) excepts from discharge debts commonly known as "property settlement debts", unless certain exceptions are met. Section 523(a)(15) was enacted to "close the dischargeability gap between property settlement debts, which are dischargeable, and alimony and child supports debts which are not." *In re Anthony,* 190 B.R. 433, 435 (Bankr.N.D.Ala.1995). The legislative history for Section 523(a)(15) provides as follows:

> Subsection (e) adds a new exception to discharge for some debts arising out of a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support. In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such 'hold harmless' and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such obligations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts. In other words, the debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. The Committee believes that payment of support needs must take precedence over property settlement debts. The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

H.R.Rep. No. 835, 103d Cong., 2nd Sess. p. 54, 1994 U.S.Code Cong. & Ad.News pp. 3340, 3363.

4. Because of the relatively recent enactment of Section 523(a)(15), the case law concerning the new subsection is just beginning to develop. At this time, no Section 523(a)(15) decision has been published by a

United States court of appeals,[1] a bankruptcy appellate panel, a federal district court, or a bankruptcy court sitting in Indiana. Four Section 523(a)(15) decisions have been published by Illinois bankruptcy courts,[2] and several other Section 523(a)(15) decisions have been published by bankruptcy courts in states other than Indiana and Illinois.[3]

■ 5. Where a creditor seeks to have a debt declared non-dischargeable, the burden of proof typically rests on the creditor seeking the non-dischargeability determination. The structure of Section 523(a)(15) calls for a different rule. There is general agreement among courts that under Section 523(a)(15), the *initial* burden of proof rests on the creditor to establish that the debt in issue is not of the kind described in 11 U.S.C. § 523(a)(5), *i.e.*, that the debt in issue is a "property settlement" debt rather than a "support" debt. *See In re Gantz*, 192 B.R. 932 (Bankr.N.D.Ill.1996); *In re Florio*, 187 B.R. 654 (Bankr.W.D.Mo.1995); *In re Silvers*, 187 B.R. 648 (Bankr.W.D.Mo.1995). *See also In re Straub*, 192 B.R. 522 (Bankr.

D.N.D.1996) (finding the language of Section 523(a)(15) sets up a rebuttable presumption of non-dischargeability); *In re Slover*, 191 B.R. 886 (Bankr.E.D.Okla.1996) (finding the language of Section 523(a)(15) sets up a rebuttable presumption of non-dischargeability).

■ 6. A majority of courts have further held that after the creditor makes his or her initial showing, the burden of proof shifts to the debtor to establish that the debt should be discharged because (A) he does not have the ability to pay, or (B) because the benefit of discharge to the debtor is greater than the detriment of discharge to the non-debtor spouse. *See, e.g., In re Gantz*, 192 B.R. 932 (Bankr.N.D.Ill.1996); *In re Slover*, 191 B.R. 886 (Bankr.E.D.Okla.1996); *In re Taylor*, 191 B.R. 760 (Bankr.N.D.Ill.1996); *In re Florez*, 191 B.R. 112 (Bankr.N.D.Ill.1995); *In re Phillips*, 187 B.R. 363 (Bankr.M.D.Fla.1995); *In re Florio*, 187 B.R. 654 (Bankr.W.D.Mo. 1995); *In re Anthony*, 190 B.R. 433 (Bankr. N.D.Ala.1995); *In re Silvers*, 187 B.R. 648 (Bankr.W.D.Mo.1995); *In re Carroll*, 187

1. The Ninth Circuit has stated that because of the enactment of Section 523(a)(15), "all debts related to the dissolution of a marriage are now generally nondischargeable". *In re Chalkley*, 53 F.3d 337, fn. 1, 1995 WL 242314 (9th Cir.1995) (unpublished opinion) (holding that the debt in issue was non-dischargeable pursuant to Section 523(a)(5)).

In the *Chalkley* opinion, the Ninth Circuit further commented that "[t]he issue on appeal [*i.e.* non-dischargeability of marital debts] will thus generally no longer arise in bankruptcies filed on or after October 22, 1994." *Chalkley*, 53 F.3d at 337, fn. 1. Based on the recent proliferation of cases decided under Section 523(a)(15), it is likely that the Ninth Circuit's prediction regarding the frequency of marital debt disputes in the bankruptcy context is overly optimistic.

2. See *In re Gantz*, 192 B.R. 932 (Bankr.N.D.Ill. 1996) (finding that date of trial is starting point for examining parties' circumstances, debtor bears burden of proof, and income of debtor's new spouse is irrelevant to debtor's ability to pay but relevant to balancing of hardships between parties);
*In re Taylor*, 191 B.R. 760 (Bankr.N.D.Ill.1996) (finding that the debt in issue was dischargeable, the debtor had ability to pay, and benefit to debtor outweighed detriment to former spouse);
*In re Florez*, 191 B.R. 112 (Bankr.N.D.Ill.1995) (finding that the debt in issue was non-dischargeable, debtor had ability to pay, and former

spouse was not entitled to attorney fees for non-dischargeability proceeding); and
*In re Hill*, 184 B.R. 750 (Bankr.N.D.Ill.1995) (finding that the debt in issue was dischargeable, debtor bears burden of proof, debtor was not able to pay, and benefit to debtor outweighed detriment to former spouse).

3. The following decisions have been published by bankruptcy courts in states other than Indiana and Illinois:

*In re Simons*, 193 B.R. 48 (Bankr.W.D.Okla. 1996); *In re Straub*, 192 B.R. 522 (Bankr.D.N.D. 1996); *In re Owens*, 191 B.R. 669 (Bankr. E.D.Ky.1996); *In re Slover*, 191 B.R. 886 (Bankr. E.D.Okla.1996); *In re Hesson*, 190 B.R. 229 (Bankr.D.Md.1995); *In re Finaly*, 190 B.R. 312 (Bankr.S.D.Ohio 1995); *In re Anthony*, 190 B.R. 429 (Bankr.N.D.Ala.1995); *In re Carter*, 189 B.R. 521 (Bankr.M.D.Fla.1995); *In re Phillips*, 187 B.R. 363 (Bankr.M.D.Fla.1995) *In re Stegall*, 188 B.R. 597 (Bankr.W.D.Mo.1995); *In re Florio*, 187 B.R. 654 (Bankr.W.D.Mo.1995); *In re Anthony*, 190 B.R. 433 (Bankr.N.D.Ala.1995); *In re Silvers*, 187 B.R. 648 (Bankr.W.D.Mo.1995); *In re Speaks*, 193 B.R. 436, 1995 WL 831038 (Bankr. E.D.Va.1995); *In re Butler*, 186 B.R. 371 (Bankr. D.Vt.1995); *In re Carroll*, 187 B.R. 197 (Bankr. S.D.Ohio 1995); *In re Zeigler*, 1995 WL 512197 (Bankr.N.D.Ohio 1995); *In re Becker*, 185 B.R. 567 (Bankr.W.D.Mo.1995); *In re Comisky*, 183 B.R. 883 (Bankr.N.D.Cal.1995); and *In re Woodworth*, 187 B.R. 174 (Bankr.N.D.Ohio 1995).

B.R. 197 (Bankr.S.D.Ohio 1995); *In re Hill,* 184 B.R. 750 (Bankr.N.D.Ill.1995).[4] The Court hereby adopts the majority position that the debtor has the burden of proving the dischargeability of a debt under subsection (A) or (B) of Section 523(a)(15).

7. The Court must resolve a second procedural issue: that of pinpointing the time at which the parties' financial positions should be examined for Section 523(a)(15) purposes. In addressing Section 523(a)(5) issues, the court looks to the parties' positions at the time the dissolution decree was entered. A comparison of Section 523(a)(5) and Section 523(a)(15) would suggest that the relevant time period for Section 523(a)(15) purposes is some time *after* the entry of the dissolution decree. Some courts have found that the appropriate measuring point for Section 523(a)(15) purposes is the filing date of the non-dischargeability complaint. *See In re Hill,* 184 B.R. 750 (Bankr.N.D.Ill.1995) (naming the measuring point without discussion; *Hill* holding on this issue later rejected by same judge in *In re Gantz* ). At least three courts have summarily held that the appropriate measuring point is the filing date of the bankruptcy petition. *See In re Carroll,* 187 B.R. 197 (Bankr.S.D.Ohio 1995); *In re Becker,* 185 B.R. 567 (Bankr.W.D.Mo. 1995); *In re Anthony,* 190 B.R. 433 (Bankr. N.D.Ala.1995). At least three courts have held that the appropriate measuring point is the time of trial. *See In re Gantz,* 192 B.R. 932 (Bankr.N.D.Ill.1996); *In re Owens,* 191 B.R. 669 (Bankr.E.D.Ky.1996); *In re Hesson,* 190 B.R. 229 (Bankr.D.Md.1995). At least one court has held that the court's inquiry should not be limited to the debtor's present ability to pay. *See In re Taylor,* 191

B.R. 760 (Bankr.N.D.Ill.1996) (court must examine the debtor's future ability to pay, as well as his ability at the time of the bankruptcy petition filing).

8. This Court adopts the position that the date of trial is the appropriate starting point in examining the relative positions of the parties. *See In re Gantz,* 192 B.R. 932, 933–935. Many events can impact on a debtor's financial situation between the filing of a bankruptcy petition, the filing of the adversary complaint, and the date of trial. *See In re Hesson,* 190 B.R. at 238. Choosing the trial date as the starting point for analysis ensures that the Court is supplied with the most up-to-date information possible.[5]

9. The Court turns to an examination of the Debtor's ability to pay the debts in issue. It is uncontroverted that the Debtor's weekly expenses exceed his weekly income by approximately $104.00. Based on the evidence before the Court, the Court can only conclude that the Debtor does not have the ability to pay the Credit Card Debt or the Property Division Debt. Paying the debts would reduce the Debtor's income below that necessary for the support of the Debtor and the Debtor's dependents, a result clearly at odds with the Congressional intent expressed in the legislative history for Section 523(a)(15). See Legislative History for Section 523(a)(15), cited hereinabove at p. 5.

10. The Court recognizes that given the Debtor's prior employment history, the Debtor's income will probably increase at some point in the future. The Court, however, has no way of predicting with any accuracy how long it will take for the Debtor's income to increase enough to meet his current weekly

---

**4.** For two minority positions, see *In re Hesson,* 190 B.R. 229 (Bankr.D.Md.1995) (holding that the debtor has the burden of proof with respect to subsection (A), and the creditor has the burden of proof with respect to subsection (B)); *In re Butler,* 186 B.R. 371 (Bankr.D.Vt.1995) (holding that the burden of proof remains on the creditor).

**5.** The *Gantz* court has discussed the possibility that a party might manipulate his or her financial situation immediately prior to trial in order to enhance the party's likelihood of success at trial.

The Debtor argues that to look at a date other than the date of the petition invites abuse. The Court notes, however, that abuses can flow from either party. Courts that utilize the date of trial rather than the date of filing must be aware of the temptation to rearrange one's finances prior to trial to achieve a favorable outcome.

*Gantz,* 192 B.R. 932, 936. Bankruptcy courts are frequently called upon to judge the motivations and recent actions of those who appear before the court; presumably, bankruptcy courts, aided by vigorous cross-examination, will be able to apply similar expertise in the Section 523(a)(15) context.

expenses, and certainly has no way of predicting how long it would take the Debtor to be in a position to make payments toward the Credit Card Debt or the Property Division Debt. Any attempt by the Court to make such a prediction would be purely speculative. Accordingly, the Court finds that in the circumstances of this case the appropriate time range for examining the Debtor's ability to pay is the date of trial, and declines to venture a guess as how much the Debtor's income might increase in the future.

11. The Court further recognizes that if the Debtor's responsibility for the Credit Card Debt is discharged, the credit card company will pursue Ms. Strayer for payment of the debt, with the result that Ms. Strayer may eventually be forced to file a bankruptcy petition. At least one court has suggested that where both parties earn modest incomes, have extremely limited budgets, and live frugal lifestyles, a Chapter 7 filing by the non-debtor spouse is "the most sensible solution" to the problems created by the parties' combined shortage of income. *In re Hill,* 184 B.R. 750, 756 (Bankr.N.D.Ill.1995). Ms. Strayer will also have the option of returning to the dissolution court and asking for an increase in child support, based on the increase in her expenses caused by the Debtor's discharge of his responsibility for the Credit Card Debt. The Court is aware that neither option is desirable from the perspective of a person in Ms. Strayer's position, but can offer no other solution to the problems created by the often unsatisfactory intersection of dissolution law and bankruptcy law.

12. Sub-sections (A) and (B) of Section 523(a)(15) are written in the disjunctive: a property settlement debt is non-dischargeable unless the debtor can prove (A) he is unable to pay the debt, *or* (B) the benefit to the debtor of discharge outweighs the detriment to the creditor of discharge. Accordingly, a debtor "must meet the burden on only one of the two prongs of Section 523(a)(15) to prevent the debt from being excepted from discharge." *In re Florez,* 191 B.R. 112, 115 (Bankr.N.D.Ill.1995). Given the decision of the Court hereinabove regarding the dischargeability of the marital debts pursuant to Section 523(a)(15)(A), the Court

need not address whether the marital debts are dischargeable pursuant to Section 523(a)(15)(B).

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Credit Card Debt and the Property Division Debt are hereby DECLARED dischargeable pursuant to Section 523(a)(15)(A).