In re Robert R. CLEGG, Debtor.

Tom FILBECK, Plaintiff,

v.

Robert R. CLEGG, Defendant.

Bankruptcy No. 95–02087–W.
Adv. No. 95–0299–W.

United States Bankruptcy Court,
N.D. Oklahoma.

Dec. 18, 1995.

Tom Filbeck, Sapulpa, OK, for Plaintiff.

James W. Stamper, Tulsa, OK, for Defendant.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

MICKEY DAN WILSON, Bankruptcy Judge.

There comes on for consideration plaintiff's motion for summary judgment and defendant's response thereto, whereupon the Court determines, concludes, and orders as follows.

On September 12, 1995, plaintiff Tom Filbeck d/b/a Filbeck Law Office ("Filbeck") filed his complaint commencing this adversary proceeding under 11 U.S.C. § 523(a)(5) against debtor-defendant Robert R. Clegg ("Mr. Clegg"). The complaint referred to a judgment in the District Court of Creek County, State of Oklahoma ("State court"), which was said to be attached to the complaint but was not so attached. On November 27, 1995, Filbeck filed his "Motion for Summary Judgement," to which a copy of the State court judgment was attached. It appears therefrom that, in the State court, Mr. Clegg sued his former wife Catherine Clegg ("Mrs. Clegg") for divorce in Case No. D 91-400; and that Filbeck was attorney for Mrs. Clegg. The State court judgment reads as follows:

### JOURNAL ENTRY OF JUDGEMENT

NOW, on this 21 day of April, 1995, this matter comes on pursuant to regular setting by Order of the Court upon Defendant's Motion to Tax Attorney Fees and Costs. Defendant appears by and through her attorney of record, Tom Filbeck; and the Plaintiff appears by and through his attorney of record, W. Creekmore Wallace. The Court, being fully advised in the premises, and having heard the stipulations and agreements of the parties hereto, and having heard argument of counsel, makes the following findings and orders.

After balancing the parties financial needs and considering the disparity in earning power between the parties, the relative business opportunities, Defendant's probable future need for support, the comparative educational backgrounds of the parties and the benefits Defendant would have received had the marriage continued; the Court finds that Defendant should be awarded judgement for her attorney fees and costs as part of the support order in this cause.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED BY THE COURT that Defendant have judgment against the Plaintiff in the amount of $17,-000.00, attorney fees and costs, for all of which let execution issue.

/s/April Sellers White
JUDGE OF THE DISTRICT COURT

Filbeck moves for summary judgment, on the ground that the State court judgment precludes relitigation of matters determined therein, and suffices as a matter of law to establish that the debt for attorney fees owed by Mr. Clegg to Filbeck via Mrs. Clegg is in the nature of "support" and is therefore excepted from discharge under 11 U.S.C. § 523(a)(5).

On September 26, 1995, Mr. Clegg by his attorney James W. Stamper answered the complaint, admitting the award of attorney fees but denying that it constituted nondischargeable "support." On December 11, 1995, Mr. Clegg filed his ". . . Response and Brief in Response to [Fillbeck's] Motion for Summary Judgment." Mr. Clegg asserts, first, that the State court judgment is being appealed; and second, that portions of Fillbeck's fees are attributable to time spent on matters "not pertaining to the child custody case," including the following: pressing Mrs. Clegg's charges of child molestation against Mr. Clegg, which "were subsequently dismissed," response p. 2 ¶ 2; defending Mrs. Clegg's repeated termination of Mr. Clegg's visitation rights, which Mr. Clegg was able to "re-establish," id. ¶ 3; "deal[ing] with" Mrs. Clegg's accusations of theft and mail-tampering against Mr. Clegg, which "were never true or proven," id. ¶¶ 4, 5; and pressing Mrs. Clegg's allegedly unfounded accusation that Mr. Clegg had violated a restraining order, id. ¶ 6. Mr. Clegg argues that his obligation to pay Mrs. Clegg's attorney fees, which she brought on herself "in harassing [him]," and which "in no way benefit the children," id. ¶ 7, "is not support," brief p. 1, and should not be excepted from discharge.

11 U.S.C. § 523(a)(5)(B) excepts from discharge "a liability designated as alimony, maintenance, or support" in or "in connection with a . . . divorce decree or other order of a court of record . . . to the extent that . . . such liability is actually in the nature of alimony, maintenance, or support." The mere fact that a divorce decree "designate[s]" a liability as "alimony, maintenance, or support" does not mean that it "is actually

in the nature of alimony, maintenance, or support." " 'What constitutes alimony, maintenance or support will be determined under the bankruptcy laws, not State law,' " H.Rep. No. 595, 95th Cong., 2nd Sess. 364, S.Rep. No. 989, 95th Cong., 2nd Sess. 79, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5864, 6319, quoted in *In re Yeates,* 807 F.2d 874, 877 (10th Cir.1986). But "[t]his is not to say that state law has no effect," *In re Yeates,* supra, p. 878.

■ Here, State law appears in the form of the State court judgment awarding attorney fees. The question is what effect this judgment may have on further proceedings in this Court under 11 U.S.C. § 523(a)(5).

> ... [T]he initial inquiry must be to ascertain the intention of the parties at the time they entered the stipulation or property settlement agreement ... This determination must be made by looking at the substance of the agreement "viewed in the crucible of surrounding circumstances." *Crist v. Crist (In re Crist),* 632 F.2d 1226, 1229 (5th Cir.1980). If the parties did not intend to create a support obligation, then the debt is a property settlement and must be discharged in bankruptcy. On the other hand, if the parties intended to create a support obligation, that debt should not be discharged.
>
> A written agreement between the parties is persuasive evidence of intent ... Thus, if the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control.

*In re Yeates,* 807 F.2d p. 878. However,

> Because the label attached to an obligation does not control, an unambiguous agreement cannot end the inquiry. As we stated in [*In re*] *Goin,* [808 F.2d 1391 (10th Cir.1987) ], "a bankruptcy court *must* look beyond the language of the decree to the intent of the parties *and* the substance of the obligation" to determine whether the obligation is actually in the nature of alimony, maintenance or support. 808 F.2d at 1392 (emphasis added) ... Thus, whether an obligation is nondischargeable under § 523(a)(5) is a dual inquiry into

both the parties' intent and the substance of the obligation. The party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence that the parties intended the obligation as support and that the obligation was, in substance, support ...

> The critical question in determining whether the obligation is, in substance, support is "the function served by the obligation at the time of the divorce." *In re Gianakas,* 917 F.2d 759, 763 (3d Cir.1990). This may be determined by considering the relative financial circumstances of the parties at the time of the divorce.

*In re Sampson,* 997 F.2d 717, 722–723, 725–726 (10th Cir.1993). Further, collateral estoppel may apply in proceedings under § 523(a)(5) as elsewhere, to preclude reexamination in Bankruptcy Court of matters which have already been actually decided, on similar standards, after full and fair opportunity to litigate, in State court, *In re Grimshaw,* 57 B.R. 181 (Bankr.N.D.Okl.1986).

Here, there is no agreement between the parties; so the intent to be ascertained is not the parties' intent but the State court's. This intent is expressed in a writing, the State court judgment; the writing is not ambiguous, and the State court's intent is clear. The State court intended this obligation to be "support."

That leaves "the substance of the obligation," to be determined "by considering the relative financial circumstances of the parties at the time of the divorce." But this has already been litigated and determined, by the State court itself. At the hearing in State court on April 21, 1995, the State court judge

> balanc[ed] the parties financial needs and consider[ed] the disparity in earning power between the parties, the relative business opportunities, [Mrs. Clegg's] probable future need for support, the comparative educational backgrounds of the parties and the benefits [Mrs. Clegg] would have received had the marriage continued ...

The last factor smacks of property division, see *Hubbard v. Hubbard,* 603 P.2d 747, 750–752 (Okl.1979). But the rest concern Mrs.

Clegg's need for support. Since the State court has already determined that "the substance of the obligation" is support, employing a standard substantially similar to that of Federal law, after hearing in open court with (so far as appears from the record) adequate opportunity for Mr. Clegg to resist, there is no reason why this Court should reexamine the matter.

 For purposes of § 523(a)(5), attorney fees take on the character of the litigation in which they were incurred, " 'at least in the absence of clear indication of special circumstances to the contrary,' " *In re Jones,* 9 F.3d 878, 881 (10th Cir.1993) quoting *In re Poe,* 118 B.R. 809, 812 (Bankr.N.D.Okl.1990). Moreover, "the term 'support' as used in § 523(a)(5) is entitled to a broad application," *In re Jones,* 9 F.3d p. 881. Here, Mr. Clegg proposes that attorney fees incurred in litigation over charges of child molestation and visitation are not "child support," and that attorney fees incurred in litigation over protection of one spouse from the other are not "spousal support." This Court does not read "support" so narrowly. Litigation over charges of child molestation and visitation certainly concern " 'the best interest of the child,' " *In re Jones,* 9 F.3d p. 881 quoting *In re Poe,* 118 B.R. at 812, and are therefore in the nature of "child support." Litigation over protection of one spouse from the other may seem marginal to "spousal support"—but, at least, it is more like "spousal support" than it is like "property division."

Alternatively, Mr. Clegg proposes that the litigation, even if "in the nature of support," was *unnecessary* or *baseless,* and in this result-oriented sense "in no way benefit[ed] the children," response p. 2 ¶ 7. It seems to this Court that the State court would not have allowed these fees at all, if the State court had believed them unnecessary or baseless. The propriety of these fees, like their nature as "support," has already been determined by the State court; and no reason appears why this Court should reexamine the matter. If the State court award of fees was erroneous, Mr. Clegg's remedy is on appeal, not on collateral attack in this Court.

The Court concludes that there is no genuine issue of fact, the same having been determined in previous litigation; and that such undisputed facts establish that these attorney fees are "support"—because so intended by the State court, because of their function and substance as determined by the State court, because they were incurred in litigation which itself was in the nature of "support," and because there is insufficient indication of special circumstances to the contrary—and are therefore excepted from discharge under 11 U.S.C. § 523(a)(5). Filbeck is entitled to judgment to this effect as a matter of law. Accordingly, Filbeck's motion for summary judgment must be and is hereby granted. Mrs. Clegg shall prepare and submit a form of judgment. However, if the State court judgment is reversed on appeal, this Court may reconsider its conclusions herein.

AND IT IS SO ORDERED.