In the MATTER OF William Michael ROBINSON, a/k/a Mike Robinson, a/k/a W. Michael Robinson, Debtor.

Cheryl Lynn Robinson and Alembik, Fine & Callner, P.A., Plaintiffs,

v.

William Michael Robinson, a/k/a Mike Robinson, a/k/a W. Michael Robinson, Defendant.

Bankruptcy No. N94–12433–WHD.
Adv. No. 95–1013N.

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

March 4, 1996.

Bruce R. Steinfeld, Alembik, Fine & Callner, P.A., Atlanta, Georgia, for Plaintiffs.

Karen Fagin White, Small, White & Marani, Atlanta, Georgia, for Debtor/Defendant.

### *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in this matter is a Motion for Summary Judgment by Cheryl Lynn Robinson and Alembik, Fine & Callner, P.A. (hereinafter collectively "the Creditors"). This Motion arises in an adversary proceeding which the Creditors have commenced to determine the dischargeability of certain debts owed them by Ms. Robinson's former husband, William Michael Robinson (hereinafter "the Debtor"). This matter constitutes a core proceeding within the subject matter jurisdiction of the Court, *see* 28 U.S.C. § 157(b)(2)(I), and it shall be disposed of in accordance with the Findings of Fact and Conclusions of Law which follow.

### FINDINGS OF FACT

William Michael Robinson married Cheryl Lynn Robinson in Fayetteville, Georgia, on April 14, 1984. As part of this marriage, Mr. Robinson also chose to adopt Ms. Robinson's four children from a previous marriage. Robinson and the newly created family then proceeded to establish a home in the Fayetteville area.

As time progressed, however, the marital relationship between Mr. and Ms. Robinson deteriorated. The parties experienced several periods of separation and reconciliation and, ultimately, they became permanently separated on June 1, 1990. Ms. Robinson then initiated an action for divorce in Fayette County Superior Court seeking division of the marital assets, as well as child support and alimony, from her estranged husband.

A jury trial ensued, and the parties ultimately were granted a divorce. As part of the conditions upon their separation, the husband became subject to the following orders of payment:

(1) An August 6, 1990, Interlocutory Order to pay "all doctor, dental, hospital, surgical, pharmaceutical, and other medical expenses of [the couple's children] which are not covered or otherwise paid by insurance," as well as a similar December 6, 1990, Order requiring payment of one-half of all such expenses;

(2) An August 6, 1990, Interlocutory Order and a Final Decree Order to pay specified debts of the couple, including outstanding obligations to the Internal Revenue Service, Dr. Davis, and Resurgens, P.C.;

(3) An Order to pay child support in the amount of $400.00 per month, per child until the death, majority, or marriage of each such child;

(4) An Order to maintain a $100,000.00 life insurance policy until such time as their youngest child attained age twenty and all outstanding divorce obligations were satisfied;

(5) An order to pay one-half, or $18,000.00, of his ex-wife's attorney's fees arising from the divorce action.

Notwithstanding these provisions in her favor, Ms. Robinson did not succeed in obtaining the monthly alimony payments which she had requested as part of the divorce.

On November 4, 1994, Mr. Robinson filed a petition under Chapter 7 of the Bankruptcy Code. Shortly thereafter, his ex-wife and her attorneys commenced the present adver-

sary proceeding seeking a determination of the dischargeability of those divorce obligations which remained outstanding as of the petition date. Specifically, the Creditors ask the Court to deem the Debtor's obligation of child support, the requirement of life insurance in favor of his ex-spouse, certain medical bills relating to the care of their children, and the allocation of I.R.S. debt by the divorce decree to be nondischargeable divorce-related obligations. In response, the Debtor concedes that the terms of 11 U.S.C. § 523(a)(5) will prevent him from discharging any debts which pertain to the support of his children. Aside from that limited concession, however, the Debtor contends that the entirety of his divorce-related obligations may be discharged in bankruptcy.

## CONCLUSIONS OF LAW

### I. The Summary Judgment Standard and the Mandate of 11 U.S.C. § 523(a)(5).

 In accordance with Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, this Court will grant a motion for summary judgment only in the absence of any material issue of fact, so as to make the movant entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant has the burden to establish that no such factual issue exists, *id.* at 324, 106 S.Ct. at 2553, and the Court will read the opposing party's pleadings liberally. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). As a drastic remedy, summary judgment only will be granted when there is no room for controversy. *United States v. Earhart (In re Earhart),* 68 B.R. 14, 15 (Bankr. N.D.Iowa 1986); *Sell v. Heath (In re Heath),* 60 B.R. 338, 339 (Bankr.D.Colo.1986).

 As previously noted, all controversy in the instant case hinges upon the dischargeability of certain debts which the Debtor incurred as a consequence of his 1993 divorce. Regarding the dischargeability of such divorce-related obligations, the Bankruptcy Code makes the following provision:

(a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement

\* \* \* \* \* \*

11 U.S.C. § 523(a)(5). This provision of the Bankruptcy Code[1] "departs from the general

---

1. Through the Bankruptcy Reform Act of 1994, Congress augmented the dischargeability provisions of section 523(a)(5) by adding a new section. *See* P.L. 103–394 (enacted on October 22, 1994), at § 304, 108 Stat. 4145 (codified as 11 U.S.C. § 523(a)(15)). In pertinent part, that newly created rule states as follows:

 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
 (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
 (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
 (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse, or child of the debtor

 \* \* \* \* \* \*

 11 U.S.C. § 523(a)(15) (1994). Thus, through their cooperative effect, sections 523(a)(5) and (a)(15) make all divorce-related obligations subject to a general rule of nondischargeability in bankruptcy. *See Chalkley v. Carroll (In re Chalkley),* 1995 WL 242314, No. 93–17198 at *1 n. 1 (9th Cir. April 25, 1995).
 Given its "catchall" character, one also might conclude that the presence of section 523(a)(15)

policy of absolution, or 'fresh start'" so as to "enforce an overriding public policy favoring the enforcement of family obligations." *Shaver v. Shaver (In re Shaver)*, 736 F.2d 1314, 1315–16 (9th Cir.1984) (citations omitted); *In re Harrell*, 754 F.2d 902, 906 n. 6 (11th Cir.1985).

▇▇▇ Whether a debt to a former spouse qualifies as nondischargeable support is said to involve questions of federal rather than state law. *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 762 (3d Cir.1990); *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989). Thus, a label placed upon the obligation by the consent agreement or court order which created it will not determine its subsequent dischargeability in bankruptcy. *Joseph v. O'Toole (In re Joseph)*, 16 F.3d 86, 88 (5th Cir.1994); *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 722 (10th Cir.1993). Rather than relying upon such labels, courts will look to factors such as:

(1) Whether the obligation under consideration is subject to contingencies, such as death or remarriage;

(2) Whether the payment was fashioned in order to balance disparate incomes of the parties;

(3) Whether the obligation is payable in installments or a lump sum;

(4) Whether there are minor children involved in a marriage requiring support;

(5) The respective physical health of the spouse and the level of education;

(6) Whether, in fact, there was a need for spousal support at the time of the circumstances of the particular case.

*See In re Bowsman*, 128 B.R. 485, 487 (Bankr.M.D.Fla.1991); *see also In re Edwards*, 33 B.R. 942, 944 (Bankr.N.D.Ga.1983)

(advancing a standard involving substantially similar points of consideration). Ultimately, as the party objecting to discharge of the debt in question, the marital creditor must carry the burden of proving the debt's nondischargeability under section 523(a)(5). *See* Fed.R.Bankr.P. 4005; *see also Gianakas* 917 F.2d at 761; *In re Long*, 794 F.2d 928, 930 (4th Cir.1986).

## II. The Award of Attorney's Fees.

### A. May an Award of Attorney's Fees which is Intended as Support Come within the Proviso of Section 523(a)(5)?

In addressing the dischargeability of the state divorce court's attorney's fee award, the Court first must address a question of law. Specifically, the Court must determine whether an award of attorney's fees by a divorce court ever may give rise to a nondischargeable debt under 11 U.S.C. § 523(a)(5). On this question, courts appear to have responded with a resounding vote of affirmation. *See Taylor v. Foiles (In re Foiles)*, 1995 WL 463101, No. 94–2582, at *1–2 (4th Cir. Aug. 7, 1995); *Joseph v. J. Huey O'Toole P.C. (In re Joseph)*, 16 F.3d 86, 87–88 (5th Cir.1994) (fees nondischargeable under section 523(a)(5) if truly "in the nature of support"); *Jones v. Jones (In re Jones)*, 9 F.3d 878, 880–81 (10th Cir.1993) (holding similarly); *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 8–11 (2d Cir.1981); *Murphy v. Murphy (In re Murphy)*, 1993 WL 246076, Adv. No. 935300, at *3–5 (D.Kan. June 14, 1993); *Ewing v. Ewing (In re Ewing)*, 180 B.R. 443, 446 (Bankr.E.D.Va.1994); *Rosenblatt v. Rosenblatt (In re Rosenblatt)*, 176 B.R. 76, 77–79 (Bankr.S.D.Fla.1994). This almost uniform conclusion owes itself partly to the mandate of subsection (B) to section

effectively relegates the section 523(a)(5) analysis to nothing more than an academic exercise. *See Id.* While it is true that subsection (a)(15)'s nondischargeability provisions cover any and all divorce debts which might fall outside section 523(a)(5), key differences between the two sections nevertheless make the applicability of section 523(a)(5) an all-important issue. For instance, while debts within section 523(a)(5) are deemed conclusively and irrefutably nondischargeable, section 523(a)(15) obligations only benefit from a presumption of nondischargeability which the debtor may rebut by satisfying ei-

ther of 523(a)(15)'s exceptional criteria. Also, while a post-divorce downturn in the debtor's finances will have no impact upon the dischargeability of any section 523(a)(5) debts, *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 906–07 (11th Cir.1985) ("present needs" test has no place in section 523(a)(5) analysis), debtors may escape the nondischargeability of section 523(a)(15) debts through a showing of currently existing financial hardship. *See* 11 U.S.C. § 523(a)(15)(A). Thus, the applicability of section 523(a)(5) retains its importance notwithstanding the addition of section 523(a)(15).

523(a)(5), which directs the courts to ignore form and instead focus upon the substantive nature of the debt. *See* 11 U.S.C. § 523(a)(5); *see also Spong,* 661 F.2d at 11 ("[w]e conclude that it would be exalting form over substance to fail to treat appellee's agreement to pay his wife's counsel fee as a 'debt ... to a spouse ... for alimony' "). Notions of policy also appear to have driven this move, since courts generally have found section 523(a)(5) to be entitled to a broad reading rather than the narrow construction traditionally afforded to discharge exceptions. *Miller v. Gentry (In re Miller),* 55 F.3d 1487, 1489 (10th Cir.1995).

■ Furthermore, for the purpose of section 523(a)(5), it appears to make no difference that the divorce court may have ordered payment directly to the attorney. *See Holliday v. Kline (In re Kline),* 65 F.3d 749, 750–51 (8th Cir.1995) ("we believe that the statute continues to except from discharge attorney fees, even if payable to an attorney rather than a former spouse"); *Magill v. Bronstein (In re Magill),* 1994 WL 416425, No. 93–2426, at *1 (4th Cir. Aug. 10, 1994); *Zerbe v. Zerbe (In re Zerbe),* 161 B.R. 939, 940 (E.D.Va.1994); *Martin v. Morello (In re Morello),* 185 B.R. 753, 757–58 (Bankr. E.D.Tenn.1995); *Wester v. Wester (In re Wester),* 187 B.R. 358, 361 (Bankr.M.D.Fla. 1995); *but see Ricci v. Simmons (In re Simmons),* 179 B.R. 645, 646 (Bankr.E.D.Mo. 1995) (finding fee award payable to attorney dischargeable because "[t]he clear language of the statute requires that the debt be to a spouse, former spouse or child of a debtor"). Just as a direction of fee reimbursement to the spouse may create an obligation of support, an order of payment directly to the attorney will create a nondischargeable debt, provided that it truly came "in the nature of alimony, support or maintenance." *Spong,* 661 F.2d at 10–11; *In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir.1983); *Spear v. Constantine (In re Constantine),* 183 B.R. 335, 336 (Bankr.D.Mass.1995).

■ In light of these clearly established legal parameters, the Court finds itself presented solely with a question of fact, i.e., whether under the circumstances the award of attorney's fees at issue bears the trappings of a support or maintenance obligation.[2] That said, the Court will turn its attention to the substance of the award at issue.

### B. Is This Particular Fee Award "in the Nature of Alimony, Support or Maintenance?"

■ In determining the "nature" of a debt for the purposes of 11 U.S.C. § 523(a)(5), courts should allow the intent of the obligation's maker to control. *Sampson v. Sampson (In re Sampson),* 997 F.2d 717, 723 (10th Cir.1993). Thus, in the context of an attorney's fee award, the intent of the divorce court to provide support should form the object of any inquiry under section 523(a)(5). *See Long v. West (In re Long),* 794 F.2d 928, 931 (4th Cir.1986) (intent of state court controls); *Foiles,* 1995 WL 463101 at *2; *Bangert v. McCauley (In re McCauley),* 105 B.R. 315, 320 (E.D.Va.1989). As with other standards which turn on preex-

---

**2.** Whether a particular obligation actually is in the nature of support is a factual question. *In re Goin,* 808 F.2d 1391, 1393 (10th Cir.1987). Indeed, the Debtor has argued that, due simply to the inherent presence of such a factual question as a part of its analysis, the Court should not grant summary judgment in this case. (Resp.Pl. Mot.Summ.J. at 4–5). In fashioning this argument, however, the Debtor appears to misconstrue the mandate of Rule 56. *See* Fed.R.Civ.P. 56 (applicable in bankruptcy pursuant to Fed. R.Bankr.P. 7056). Only those material facts which remain the subject of a "genuine dispute" may preclude summary judgment. *Augusta Iron and Steel Works v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). Furthermore, a factual dispute only qualifies as "genuine" for the purposes of Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 594 (11th Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

In short, the summary judgment process does not require the Court to determine whether no factual determinations will be necessary as part of the litigation. Rather, the Rules require the Court to find whether the obvious one-sidedness of such an impending determination makes the movant entitled to judgment as a matter of law. *Id.* The Debtor's apparent assertions to the contrary find no merit in the text of Rule 56. *See* Fed.R.Civ.P. 56 (applicable in bankruptcy pursuant to Fed.R.Bankr.P. 7056).

isting intent, however, the determination of a divorce court's motive in awarding fees most likely will not be resolved from the introduction of direct evidence. Consequently, courts rely upon set factors which are said to evidence the requisite intent. *Ewing,* 180 B.R. at 446 (citing *McCauley,* 105 B.R. at 319).

Somewhat predictably, there appears to be a split of authority regarding the dominant standard for divining a state court's intent in awarding attorney's fees and the consequent dischargeability of that award.[3] Several courts, for instance, view the function served by the award as dispositive evidence of the state court's intent. *Adams v. Zentz,* 963 F.2d 197, 199 (8th Cir.1992); *In re Gianakas,* 917 F.2d 759, 763 (3d Cir.1990); *Rul–Lan v. Rul–Lan (In re Rul–Lan),* 186 B.R. 938, 944 (Bankr.W.D.Mo.1995). To that end, these courts focus upon the relative financial positions of the two former spouses at the time of the award and, particularly, whether it looks as though the state court took any such imbalance into consideration. *Joseph,* 16 F.3d at 88 ("the attorney's fee award is deemed nondischargeable if the award itself reflects a balancing of the parties' financial needs"); *Zerbe,* 161 B.R. at 941; *In re Slater,* 188 B.R. 852, 856 (Bankr.E.D.Wash. 1995); *Rosenblatt,* 176 B.R. at 78.

■■■ Other courts find that the nature of the underlying litigation should dominate the examination of a fee award's nature. *Jones,* 9 F.3d at 881–82; *Spong,* 661 F.2d at 9; *Murphy v. Murphy (In re Murphy),* 1993 WL 246076, No. 92–1596 (D.Kan. June 14, 1993); *Filbeck v. Clegg (In re Clegg),* 189

B.R. 818, 821 (Bankr.N.D.Okla.1995) ("[f]or the purposes of § 523(a)(5), attorney's fees take on the character of the litigation in which they were incurred"). Thus, while litigation involving an attempt to obtain alimony or child support may give rise to a "support-like" fee award, a court battle solely over property division or custody of a child may not. *See Roberson v. Roberson (In re Roberson),* 187 B.R. 159, 163 (Bankr.E.D.Va. 1995) (citing *Bulman v. Bulman (In re Bulman),* 123 B.R. 24 (Bankr.E.D.Va.1990), for the proposition that courts must look to the dischargeability of the debt which gave rise to the fees). Similarly, those fees which may be viewed as "inextricably intertwined" with the litigation for nondischargeable support[4] are said themselves to qualify for nondischargeability under section 523(a)(5). *Davidson v. Davidson (In re Davidson),* 947 F.2d 1294, 1298 (5th Cir.1991); *Roberson,* 187 B.R. at 163; *Rosenblatt,* 176 B.R. at 79.

■■■ Each of these standards has the benefit of logical appeal and, likewise, each should offer substantial guidance to courts as they attempt to discover the intent behind a divorce court's award of attorney's fees to a particular spouse. To that end, the Court finds it appropriate to incorporate both modes of analysis into its present inquiry. Thus, like several courts before it, the Court shall employ a mixed approach, balancing both the apparent function of the award and the nature of the litigation in an attempt to discover the intent behind the award of fees. *See Taylor v. Foiles (In re Foiles),* 1995 WL

---

**3.** Awards of attorney's fees in the course of a divorce action do not easily lend themselves to evaluation under the traditional multi-factored tests which have been used for other divorce obligations. *See Shaver v. Shaver (In re Shaver),* 736 F.2d 1314, 1316 (9th Cir.1984) (setting out a four-part test which includes factors such as whether "an obligation terminates on the death or remarriage of the recipient" and whether the obligation is "paid in installments"). Accordingly, while struggling to fit the fee award within those traditional models, courts appear to choose independent factors which are said to provide dispositive evidence that a fee award came "in the nature of support, alimony, or maintenance." *See, e.g., Catalona v. Holdenried (In re Holdenried),* 178 B.R. 782, 784–87 (Bankr.E.D.Mo. 1995).

**4.** In fact, several courts appear to take this "intertwinement" theory so far as to create a per se rule of nondischargeability regarding divorce fee awards. *See, e.g., Ewing v. Ewing (In re Ewing),* 180 B.R. 443, 446 (Bankr.E.D.Va.1994); *Rosenblatt,* 176 B.R. at 79. While the Court agrees with the basic premise espoused by these courts, i.e., that the nature of the involved litigation should factor into the award's dischargeability, the Court does not find such a per se rule to be appropriate. Ultimately, the dischargeability of a divorce-related fee award must turn on the particular facts of the case in question. *See In re Goin,* 808 F.2d 1391, 1393 (10th Cir.1987); *see also Taylor v. Foiles (In re Foiles),* 174 B.R. 692, 696 (E.D.Va.1994) *aff'd* 1995 WL 463101, No. 94–2582, at *1–2 (4th Cir. Aug. 7, 1995) (arguing against the construction of a per se rule of nondischargeability for attorney's fees).

463101, No. 94–2582, at *1–2 (4th Cir. Aug. 7, 1995); *Gionis v. Wayne (In re Gionis)*, 170 B.R. 675, 682–84 (9th Cir. BAP 1994) (employing a multi-factored approach).

### (1) The Relative Finances of the Litigants and the Function Served by the Award.

█ In the instant case, the parties did not stand as financial equals at the time of their divorce. Against the Defendant's 1993 gross income of $130,213.00, his estranged spouse merely held a part time job which provided her with $10–15 per hour in compensation. In and of itself, the presence of this financial disparity provides strong indicia of an intent by the divorce court to make the fee award "in the nature of alimony, support or maintenance." *See Sampson*, 997 F.2d at 725–26 ("function served by the obligation ... may be determined by considering the relative financial circumstances of the parties at the time of the divorce"); *see also Murphy*, 1993 WL 246076 at *4; *In re Slater*, 188 B.R. 852, 856 (Bankr.E.D.Wash. 1995).

Still further support for such a characterization as maintenance may be found in the state statute upon which the divorce court based its award. Making provision for such assessments of attorney's fees by a family law judge, the Georgia Code provides:

> The grant of attorney's fees as part of the expenses of litigation, made at any time during the pendency of the litigation, whether the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case, including but not limited to contempt of court orders involving property division, child custody, and child visitation rights, shall be:
>
> (1) within the sound discretion of the court, except that the court shall consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party
>
> \* \* \* \* \* \*

O.C.G.A. § 19–6–2. Thus, state law required the divorce court to base any award of fees primarily upon the respective finances of the two parties. *Rogers v. Overstreet (In re Rogers)*, 164 B.R. 382, 392–93 (Bankr. N.D.Ga.1994) (Drake, B.J.). To the extent that the divorce court assessed attorney's fees against the Defendant under the Georgia standard, that award consequently may be interpreted as an obligation of support for the purposes of 11 U.S.C. § 523(a)(5). *See id.* at 392 ("the Superior Court of Spalding County necessarily must have evaluated the financial position of both the Debtor and Overstreet ... [and therefore] the Court finds that the Debtor's obligation to pay attorney's fees qualifies as alimony, maintenance, or support"); *see also Gionis*, 170 B.R. at 681 (looking to the terms of the California state statute under which that award was made to determine its nondischargeability); *Wright v. Wright (In re Wright)*, 184 B.R. 318, 325 (Bankr.N.D.Ill. 1995) (examining the substance of a similar Illinois law).

### (2) The Nature of the Litigation which Gave Rise to the Fees at Issue.

A second key factor in determining whether an attorney's fee award came "in the nature of alimony, support or maintenance" requires the Court to examine the scope of the underlying litigation. On this point, the Defendant quickly points out that the jury trial which produced their divorce ended with a foreclosure of his ex-wife's request for alimony. Accordingly, he reasons, because the litigation concluded with a denial of alimony in any form to his ex-wife, the divorce court could not have intended the fee award to function as a type of support.

█ While this argument certainly has some logical appeal, it presents a short-sighted view of the manner in which attorney's fee awards are said to "support" estranged spouses. Independent of any need for general maintenance payments, the fee award frequently bases itself on the recognition that support "may be essential to a spouse's ability to sue or defend a matrimonial action and thus necessary under the law." *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 9 (2d Cir.1981). Thus, the need to pursue alimony and support in divorce presents a separately subsidizable interest which may give rise to a nondischargeable debt, even where the request for alimony ultimately is denied.

*Gionis,* 170 B.R. at 682–83 (finding the divorce court's denial of support "not dispositive" of the fee award's support-like character); *Ewing,* 180 B.R. at 446 (finding "little merit" in the debtor's argument that, since the state court had denied support, the fee award could not have a support function); *Zerbe,* 161 B.R. at 941 (a debt for attorney's fees can be in the nature of support even though any claim to alimony is waived).

Here, the Debtor's ex-spouse vigorously pursued an award of child support as well as alimony in the course of the divorce proceedings. Although she did not succeed in recovering alimony, the state court did award her one-half of her attorney's fees in apparent recognition of the aforementioned concept that the pursuit of support constitutes a separately subsidizable interest. By necessity, the state court based its fee award on the financial abilities of both the Debtor and his ex-spouse as they stood at that time. Furthermore, the existing fiscal disparity between the two parties at that time suggests strongly that the award had as its function the support of the ex-wife. In light of this wealth of evidence, the Court finds no genuine dispute to exist regarding the support-like character of the fee award. Consequently, summary judgment is proper on the question of the fee award's nondischargeability.

### III. The Child Support, Life Insurance, and Medical Care Obligations.

■ In addition to its attorney's fee award, the state divorce court ordered the Debtor to pay monthly support of $400.00 per child. Little doubt can exist that the outstanding portion of this debt, representing some $16,200.00, may not be discharged by the Debtor as part of his bankruptcy case. *See* 11 U.S.C. § 523(a)(5) (making debts for the support of children nondischargeable in bankruptcy). Similarly, to the extent that the state court ordered the Debtor to maintain a $100,000.00 life insurance policy to secure these support obligations, the resulting debt for premiums stands nondischargeable in bankruptcy. *Sweck v. Sweck (In re Sweck),* 174 B.R. 532, 534–36 (Bankr.D.R.I. 1994); *Pierce v. Pierce (In re Pierce),* 142 B.R. 308, 309–10 (Bankr.E.D.Ark.1992). Thus, the Court finds the Creditors to be entitled to judgment as a matter of law regarding the nondischargeability of these two debts relating to the Debtor's obligation for future support.

■ The scope of the Debtor's nondischargeable child support obligations will not end, however, simply with his duty to make future support payments. Just as the Debtor may not discharge debts for future support, he may not avoid liability for individual expenses related to the care of his children which a divorce court previously has ordered him to pay. *Beck v. Beck (In re Beck),* 1994 WL 687446, Adv. No. 94–0460 at *5 (Bankr. W.D.Tenn. filed Dec. 6, 1994); *In re English,* 146 B.R. 874, 875 (Bankr.S.D.Fla.1992) (medical bills relating to care of children held nondischargeable where divorce decree had placed responsibility for those bills with the debtor). Consequently, to the extent that a divorce court has devised a comprehensive child support plan, encompassing both the assumption of existing support-related debts and the obligation to make future payments of direct support, both aspects of that support plan should fall outside bankruptcy's general rule of dischargeability. *See Miller v. Burger (In re Miller),* 55 F.3d 1487, 1490 (10th Cir.1995) (debt for psychologist's fees incurred in course of divorce found to be part of overall support scheme and, therefore, held nondischargeable); *Growney v. Growney (In re Growney),* 15 B.R. 849, 850 (Bankr.W.D.N.Y.1981).

In the instant case, the state divorce court erected just such a two-pronged scheme of child support. In addition to the Final Decree's assessment of $400.00 per child as monthly child support, the Interlocutory Orders of the court ordered the Debtor to pay any and all existing debts related to the medical care of the four children. Like the creation of the Debtor's direct support obligation, the assessment of responsibility for these debts formed part and parcel of an unmistakably clear program by the state court to insure the present and future well-being of the children. As such, to the extent that these debts still remain outstanding, the Debtor may not discharge responsibility for them in bankruptcy.

## IV. The Debtor's Obligation to Pay the Couple's 1989 and 1990 Federal Income Taxes.

In contrast to his responsibility for the aforementioned medical bills, the Debtor's assumption of the couple's 1989 and 1990 federal tax obligations had nothing to do with the support of the four children. Moreover, the Creditors have not demonstrated to the Court's satisfaction that this obligation served as a form of spousal support fashioned by the state court for Ms. Robinson's financial welfare. Thus, for the purposes of the instant summary judgment motion, the Court must conclude that the Debtor's tax-related divorce obligations do not meet the criteria of section 523(a)(5). *See* 11 U.S.C. § 523(a)(5).

To the extent that these divorce-related tax debts have failed to come within the narrow range of section 523(a)(5), the Debtor has the opportunity to discharge them by showing either the existence of an undue hardship or the presence of overwhelming interests favoring absolution. *See* 11 U.S.C. § 523(a)(15); *see also Carroll v. Carroll (In re Carroll),* 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995); *Becker v. Becker (In re Becker),* 185 B.R. 567, 570 (Bankr. W.D.Mo.1995). In pursuit of such a showing, the Debtor has submitted to the Court a monthly budget reflecting expenditures which are quite sizeable in relation to his current income. While the accuracy of this budget remains the subject of some dispute between the parties, the Court finds it to raise a material question of fact regarding the satisfaction of section 523(a)(15) in this case. Consequently, the Court will deny the Creditors' motion for summary judgment as to this final obligation, leaving the question of section 523(a)(15)'s applicability for further resolution at trial. *See Barstow v. Finaly (In re Finaly),* 190 B.R. 312, 315 (Bankr. S.D.Ohio 1995).

### CONCLUSION

The Court having given the matter careful consideration, it is **ORDERED** that the Motion for Summary Judgment by Cheryl Lynn Robinson and her attorneys, Alembik, Fine & Callner, P.A. is **GRANTED IN PART** and **DENIED IN PART,** according to the following terms:

(1) The motion is **GRANTED** to the extent that the $18,000.00 debt owed by William Michael Robinson to Alembik, Fine & Callner for representation of his former wife in their divorce constitutes a nondischargeable obligation of support pursuant to 11 U.S.C. § 523(a)(5);

(2) The motion is **GRANTED** to the extent that the $16,200.00 debt owed by William Michael Robinson for future child support payments also constitutes a nondischargeable obligation of support pursuant to 11 U.S.C. § 523(a)(5);

(3) The motion is **GRANTED** to the extent that the $490.00 debt owed by William Michael Robinson to First Colony Insurance Company for premiums due on a term life insurance policy, the purchase of which was mandated by the parties' divorce decree, constitutes an obligation of support which is nondischargeable under 11 U.S.C. § 523(a)(5);

(4) The motion is **GRANTED** to the extent that William Michael Robinson owes debts of $2,515.00 to Clayton General Hospital, $1,000.00 to James C. Davis, D.M.D., P.C., and $1,015.00 to Resurgens, P.C., and each of these debts constitutes an obligation of support which is nondischargeable under 11 U.S.C. § 523(a)(5); and

(5) The motion is **DENIED,** as it pertains to William Michael Robinson's obligation to hold his wife harmless on a $19,400.00 debt arising from the couples' 1989–90 tax returns.

**IT IS SO ORDERED.**