In the **MATTER OF** William Michael **ROBINSON,** a/k/a Mike Robinson, a/k/a W. Michael Robinson, Debtor.

**Cheryl Lynn ROBINSON and Alembik, Fine & Callner, P.A., Plaintiffs,**

v.

**William Michael ROBINSON, a/k/a Mike Robinson, a/k/a W. Michael Robinson, Defendant.**

**Bankruptcy No. N94–12433–WHD. Adv. No. 95–1013N.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

April 18, 1996.

Bruce R. Steinfeld, Alembik, Fine & Callner, P.A., for Plaintiffs.

Karen Fagin White, Small, White & Marani, for Debtor/Defendant.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge. ·

Currently before the Court in this case is the Motion to Extend Time for Filing Notice of Appeal of William Michael Robinson (hereinafter "the Debtor"). Through this Motion, the Debtor asks the Court to find that he excusably neglected to file an appeal of a March 4, 1996 Order, wherein partial summary judgment of nondischargeability was entered against him on the bankruptcy claims of Cheryl Lynn Robinson and Alembik, Fine & Callner (hereinafter collectively "the Creditors"). This motion constitutes a core proceeding within the subject matter jurisdiction of the Court, see 28 U.S.C. § 157(b)(2)(I), and it shall be disposed of in accordance with the following reasoning.

### DISCUSSION

The instant controversy arises from an adversary proceeding, commenced by the Creditors to determine the dischargeability of five categories of debt owed by the Debtor as a consequence of a state court divorce decree.[1] The matter having been submitted to it on the Creditor's Motion for Summary Judgment, on March 4, 1996, the Court entered an Order finding four of the categories of debt to be nondischargeable pursuant to 11 U.S.C. § 523(a)(5).[2] As to the remaining debt category, however, the Court found the section 523(a)(5) exception not to apply, concluding that the debt's nondischargeability under other provisions of the Bankruptcy Code necessarily would require resolution at trial.[3]

On March 21, 1996, the Debtor filed the present Motion to Extend Time for Filing Notice of Appeal, wherein he concedes that he failed to file a notice of appeal within the requisite ten-day period, yet contends that his oversight arose from "excusable neglect." In support of this assertion, the Debtor argues that his failure to timely file an appeal came as a consequence of his counsel's burdensome workload and good faith error, circumstances which he alleges constitute excusable neglect under the flexible standard of *Pioneer Investment Svcs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). As such, the Debtor contends that the Court should grant him leave to file an untimely notice of appeal pursuant to 28 U.S.C. § 158(c)(2).

### I

Generally speaking, court orders may be divided into two categories—those decisions which constitute a "final order" and those which merely give rise to an interlocu-

---

1. More specifically, the dischargeability action involved the following obligations, each of which arose in the course of the Debtor's divorce: (1) an award of attorney's fees by the divorce court; (2) an award of child support; (3) an order securing performance of the child support obligation by requiring the maintenance of a life insurance policy in favor of the Debtor's ex-wife; (4) an order placing responsibility for certain existing and subsequent bills related to the care of the couple's children with the Debtor; and (5) an order that the Debtor hold his wife harmless on the couple's 1989–90 tax obligations.

2. The Court found the divorce court's award of $18,000.00 in attorney's fees and each of the obligations which related to the care or support of the couple's children to constitute nondischargeable awards of "maintenance or support" as defined by 11 U.S.C. § 523(a)(5). *See Robinson v. Robinson (In re Robinson)*, 193 B.R. 367 (Bankr.N.D.Ga.1996).

3. As a consequence of its failure to meet the proviso of section 523(a)(5), this remaining category of debt, involving the Debtor's obligation to hold his ex-wife harmless on approximately $19,-400.00 in tax obligations, became the subject of section 523(a)(15)'s default nondischargeability provisions and the exceptions contained therein. *See Robinson*, 193 B.R. at 376–77; *see also* 11 U.S.C. § 523(a)(15) (advancing a general presumption of nondischargeability for divorce related debts not within section 523(a)(5), yet providing exceptions to that rule for cases in which either the Debtor has no ability to pay the debt in question or the equities strongly favor dischargeability). Having reached this conclusion, the Court found a material issue of fact to remain on whether the tax debts in question would meet either of the exceptions posed by section 523(a)(15) and, therefore, ruled that the matter would have to be resolved at trial. *Id.*

**700**

tory, or nonfinal, order. As applied in bankruptcy, "final orders" are those which resolve some discrete dispute within the larger bankruptcy case. *See Flor v. BOT Fin. Corp. (In re Flor)*, 79 F.3d 281, 282–83 (2d Cir.1996); *Sumy v. Schlossberg*, 777 F.2d 921, 922 (4th Cir.1985). "The disposition of a discrete dispute" generally is considered to mean the resolution of an adversary proceeding within the bankruptcy case. *Dicola v. Am. Steamship Owners Mutual Protection and Indemnity Assoc., Inc. (In re Prudential Lines, Inc.)*, 59 F.3d 327, 332 (2d Cir.1995).

■ Here, the Debtor appears to consider the Court's March 4, 1996 entry of partial summary judgment against him as a substantively final order. Partial summary judgments, however, very rarely give rise to a final order for the purposes of appeal. *See Ernst & Young v. Matsumoto (In re United Ins. Man., Inc.)*, 14 F.3d 1380, 1383 (9th Cir.1994) (partial summary judgment must somehow cause an effective disposition of all claims asserted in the underlying adversary proceeding in order to be final). To the contrary, since they customarily leave some portion of the underlying "discrete dispute" unresolved, partial summary judgments, such as that entered by the Court, merely should give rise to an interlocutory order. *See* King et al., 1 COLLIER ON BANKRUPTCY ¶ 303[6][b] (15th ed. 1996); *see also LTV Steel Co., Inc.,*

*v. United Mine Workers of Am.,* 922 F.2d 86, 90 (2d Cir.1990). In light of this fact, the Court must evaluate the merits of the Debtor's present motion with an eye toward the interlocutory character of the Order that he seeks to appeal.

**II**

■ Like their more final counterparts, interlocutory orders of a bankruptcy judge may be appealed to the district court. 28 U.S.C. § 158(a)(3). At the same time, however, a litigant has no absolute right of appeal regarding such orders. Rather, he must seek leave to appeal from the district court. *See id.; Cochrane v. Vaquero*, 76 F.3d 200, 203 (8th Cir.1996). Also, any such motion for leave to appeal must comply with the ten-day time limitation generally applicable to appeals of final orders. *See* 28 U.S.C. § 158(c)(2); *see also* FED.R.BANKR.P. 8002(a).

■ At least with respect to final orders, Rule 8002 provides relief for parties who fail to meet the ten-day limit as a consequence of excusable neglect.[4] Moreover, because the relevant statute places motions for leave to appeal interlocutory orders subject to the same timing limitations applied to final orders, the Court finds it at least theoretically possible for the "excusable neglect" exception governing untimely final order appeals also to apply to interlocutory appeals beyond the ten-day period.[5] As a result, the Court will

4. As previously noted, litigants always may appeal the final orders of a bankruptcy court to the district court or a bankruptcy appellate panel, provided that they do so within ten days after that order's entry. *See* 28 U.S.C. § 158(a), (c)(2); *see also* FED.R.BANKR.P. 8002. If a prospective appellant neglects to file a notice of appeal within the requisite ten-day period, he nevertheless may petition the bankruptcy court for an additional twenty days in which to file such an appeal by demonstrating that his omission arose from "excusable neglect." *See* FED.R.BANKR.P. 8002(c).

While Rule 8002 does not define the term "excusable neglect," the Supreme Court shed significant light upon the issue as part of its recent holding in *Pioneer Investment Svcs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), wherein it interpreted the term as applied in Federal Rule of Bankruptcy Procedure 9006. *See Pyramid Energy, Ltd. v. Duquoin Natl. Bank (In re Pyramid Energy, Ltd.)*, 165 B.R. 249, 251 (Bankr.S.D.Ill. 1994) (*Pioneer* applies with equal force to cases under Rule 8002). Under the guidelines ad-

vanced by the *Pioneer* Court, the presence of "excusable neglect" turns on the totality of the circumstances involved. *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498. As part of its considerations, however, a court should take into account a variety of equitable considerations, including "the danger of prejudice to the [nonmovant], the length of the delay and its potential impact upon judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

5. In the course of placing discretionary jurisdiction in the district court to hear interlocutory appeals from the bankruptcy court, 28 U.S.C. § 158 provides that such appeals shall be taken "in the time provided by Rule 8002 of the Bankruptcy Rules." *See* 28 U.S.C. § 158(c)(2). By this reference, it consequently would appear that section 158 incorporates the Rule's basic ten-day time limit as well as the "excusable neglect" exception presented therein. *See* Fed.R.Bankr.P. 8002(c) (presenting such an exception as part of

assume arguendo that such a procedural right does exist for the untimely pursuit of an interlocutory appeal and, therefore, turn to the merits of the Debtor's request.

## III

■ As the Supreme Court has noted, a proper "excusable neglect" inquiry should encompass "all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498; *Adv. Estimating Sys., Inc. v. Riney*, 77 F.3d 1322, 1324–25 (11th Cir.1996); *Tron & White v. Gottschalk (In re Gottschalk)*, 78 F.3d 593 (9th Cir.1996). Thus, at least in the context of interlocutory appeals, the Court finds it appropriate to give some consideration to the prejudicial and procedural consequences of its decision regarding the untimely appeal. *See Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498 (advancing a nonexclusive list of factors which includes certain related elements of prejudice as well as the impact upon subsequent judicial proceedings). Given that an interlocutory order will merge into whatever final disposition a court produces and that it may be appealed at that time, *Balla v. Idaho State Board of Corrections*, 869 F.2d 461, 468 (9th Cir.1989), the Court finds it unlikely that many oversights in appealing an interlocutory order will give rise to significant prejudice and, therefore, "excusable neglect." Certainly, on the facts before it, the Court finds no harm to flow as a consequence of forcing the Debtor to wait until the time of final disposition to appeal. As such, this consideration argues strongly against the presence of "excusable neglect" under Rule 8002(c).

■ A second key factor in the calculus of "excusable neglect" looks to the nature of the oversight itself. Specifically, the more an act of neglect may be said to have arisen from circumstances beyond the litigant's control, the closer it comes to the realm of excusability. *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498; *Riney*, 77 F.3d at 1324–25; *Gottschalk*, 1996 WL 83877 at *2. Here, however, the Debtor's failure to file a timely motion for leave to appeal owed itself solely to an error made by his counsel as a consequence of her burdensome workload. (White Aff. at ¶ 5). In the absence of any more exigent circumstances, the nature of this oversight argues against providing the Debtor an opportunity to pursue a belated interlocutory appeal. *See Pioneer*, 507 U.S. at 398, 113 S.Ct. at 1499 ("[i]n assessing the culpability of the respondent's counsel, we give little weight to the fact that counsel was experiencing upheaval in his law practice"); *see also Huennekens v. Marx (In re Springfield Contracting Corp.)*, 156 B.R. 761, 767 (Bankr.E.D.Va.1993).

In sum, because it merely constitutes an interlocutory order, the decision from which the Debtor now seeks an untimely appeal will become part and parcel of an upcoming final order, and it may be appealed at that time. This fact, along with the Debtor's exclusive responsibility for his failure to pursue an interlocutory appeal, argue strongly against any finding of "excusable neglect" which might warrant an extension of time. Indeed, the facts suggest that, by his own oversight, the Debtor has committed not an act of "excusable neglect," but a feat of harmless

---

the timing mandate posed by that Rule). Moreover, this inclusion of the Rule 8002 time requirements also would appear to encompass Rule 8002(c)'s direction that the determination of "excusable neglect" be made by the bankruptcy judge. *See id.* As a result, circumstances of untimeliness would appear to create an occasion upon which the bankruptcy court must in essence certify a motion for interlocutory appeal. *Compare In re St. Joseph's Hosp.*, 102 B.R. 416, 421 (Bankr.E.D.Pa.1989) (under normal circumstances, a bankruptcy court need not certify an interlocutory appeal to the district court).

This question remains primarily a theoretical one, however, in that no published opinion appears to have dealt with the permissibility of untimely interlocutory appeals upon a showing of "excusable neglect." *See e.g., In re Almac's, Inc.*, 1994 WL 228645, No. 93–12090 at *1 (Bankr.D.R.I. May 11, 1994) (treating an absence of "excusable neglect" and the underlying order's interlocutory nature as *alternate* grounds upon which to deny an appellant's untimely motion). Presumably, this dearth of authority arises from the fact that, having missed the opportunity to pursue an interlocutory appeal, most litigants simply would wait for a final order to appeal rather than pressing the issue of excusable neglect.

error. Consequently, it would not be proper at this juncture to permit him to file an untimely motion for leave to appeal.

### CONCLUSION

The Court having given the matter careful consideration, it is **ORDERED** that the "Motion to Extend Time for Filing Notice of Appeal" of William Michael Robinson is **DENIED.**

**IT IS SO ORDERED.**